## CHRISTENSEN v. BEEBE, Sheriff.

No. 1773.   Decided June 25, 1907, and on rehearing August 1, 1907
(91 Pac. 129).

1. HOMESTEAD—SALE—EXEMPTION OF PROCEEDS. The acceptance of
an oral promise to deliver brick in consideration of the conveyance
of land constituting a homestead is not a "receipt of the proceeds"
of a sale thereof within Revised Statutes 1898, section 1158,
exempting the "proceeds" of a sale of a homestead for one year
after the "receipt thereof," and the year of exemption does not
run from that time, but from the time of delivery of the brick.

2. SAME.   The term "proceeds," used in Revised Statutes 1898,
section 1158, exempting the "proceeds" of a sale of a homestead
for one year after the receipt thereof, means some tangible thing
which is the subject of manual delivery and receipt.

#### ON PETITION FOR REHEARING.

3. SHERIFFS—LIABILITY FOR MISCONDUCT. Though property may have
been lawfully seized by a sheriff under an execution, yet, if he
thereafter wrongfully converted it to his own use, he is liable.

APPEAL from District Court, Seventh District; Ferdinand
Erickson, Judge.

Action by Lars Christensen against Oscar Beebe, as sheriff.
From a judgment for defendant, plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*F. E. Woods, S. A. King,* and *Saml. Russell* for appel-
lant.

*H. J. Dinniny* for respondent.

FRICK, J.

The plaintiff sues to recover the value of certain property
alleged to have been converted by the defendant. The ques-
tions to be determined arise out of the facts stated in the com-
plaint wherein it is, in substance, alleged that plaintiff, at
the time mentioned in the complaint, was, and now is, a resi-
dent of Utah, the head of a family consisting of his wife and

three children, all of whom are dependent on him for support; that on June 26, 1905, and from thenceforth the plaintiff was, and now is, the owner of and entitled to the possession of ten-thousand brick of the value of $65; that on the said 26th day of June, at Castle Dale, Emery county, Utah, by virtue of an execution duly issued by the clerk of the district court of said county upon a judgment duly filed therein, the defendant as sheriff of said county, wrongfully and unlawfully levied upon and seized said ten thousand brick as the property of the plaintiff; that the judgment upon which said execution was issued was not recovered, either in whole or in part, for the purchase price of said brick; that said brick at the time of levy and seizure were, and now are, exempt from execution sale under process under the laws of this state; that said brick were the proceeds of a sale of plaintiff's real estate constituting his homestead, not exceeding in value the sum of $150, which plaintiff, on or about the month of May, 1903, sold and thereafter duly conveyed to one Peterson for a consideration of $100, which consideration Peterson agreed to pay to plaintiff in the summer or fall of 1904 by the delivery of bricks or adobes to him; that plaintiff always has claimed, and now claims, said brick as exempt, the same being part of the proceeds of the sale of said homestead, and that said homestead was sold and said brick were agreed to be delivered and received and used for the purpose of constructing a dwelling house as a home upon plaintiff's real estate at Castle Dale, Emery county, Utah, now owned and occupied as a homestead by the plaintiff, the value of which does not exceed the value of $800, and which is all the real estate owned by the plaintiff; that no part of said brick had ever been delivered to plaintiff, and he had never received the same, or any part thereof, but that the same were levied upon by the defendant as the property of plaintiff before delivery to or the receipt thereof by him: that ever since the levy and seizure of said brick the defendant has wrongfully detained the same from the plaintiff, and on the 6th day of July, 1905, at Castle Dale, Emery county, Utah, the said defendant wrongfully converted said brick to

his own use, to the damage of the plaintiff in the sum of $65; that on the 25th day of July, 1905, and before the commencement of this action, the plaintiff demanded said brick from the defendant, and on said day notified him that he claimed the same as exempt from levy upon execution. Upon substantially the foregoing allegations plaintiff prayed judgment against said defendant for the value of said brick. The defendant appeared and demurred to the complaint upon the ground that it failed to state facts sufficient to constitute a cause of action. The demurrer was sustained; and, the plaintiff electing to stand on his complaint, the court duly entered judgment against him, dismissing the action, from which plaintiff appeals.

The only error assigned is the action of the court in sustaining the demurrer. It will be observed that the complaint is not as clear as it might be with regard to the allegations constituting the alleged conversion of the brick. There is no direct allegation that defendant sold the brick under the execution, under which the levy was made, but it is directly alleged that defendant wrongfully converted the same to his own use. If this were so, the levy under the execution, however lawful, would afford the defendant no protection, regardless of whether the brick were subject to execution or not. With regard to this, however, and in respect to other minor defects of the complaint, both parties, with a most commendable spirit of fairness, have stripped the matter from technicalities, and have asked that the real and only question involved, to wit, the exempt character of the brick, be considered and determined by us, and have expressed a desire that for that purpose the complaint should be considered as sufficient. In deference to those wishes we shall so consider it. The question therefore is, were the ten thousand brick exempt as a part of the proceeds of the sale of plaintiff's homestead, within the purview of section 1158, Rev. St. 1898, which, so far as material here, provides, "and the proceeds of the sale thereof (homestead), to the amount of the exemption existing at the time of sale, shall be exempt from execution or other process for one year after the receipt

thereof by the person entitled to the exemption?" - We remark, first, that there can be no reasonable doubt with regard to the ten thousand brick as constituting a part of the proceeds of the sale of plaintiff's real estate, which it is alleged, and admitted by the demurrer, constituted his homestead, and thus at the time of the sale thereof was exempt, together with the proceeds thereof to the extent of at least $1,500. The exempt character of the proceeds, however, continued so only for the period of one year after the "receipt thereof" by the plaintiff, and thus the question arises, what constitutes the receipt of the proceeds of the sale, within the purview of section 1158 above quoted? Defendant's counsel contends that the proceeds as applicable to voluntary sales of homestead consists in whatever the seller agrees to accept and receive as the consideration or payment for the homestead, be the same money, property, or anything else which represents property or value. This contention seems not only just upon principle, but, as might well be expected, is also sustained by the authorities. (*Bailey v. Steve,* 35 N. W. 735, 70 Wis. 316; *Phelps v. Harris,* 101 U. S. 380, 25 L. Ed. 855; *Hoppe v. Goldberg,* 53 N. W. 17, 82 Wis. 660.) Of course, the meaning of the term "proceeds" may be extended or restricted in accordance with the particular subject-matter out of which they arise, or with regard to the peculiar disposition or application to be made of them. With regard to a forced sale upon execution, the proceeds are, of course, always understood to be in the form of money, or some other medium of exchange, the equivalent of money; or, if an agent were empowered to sell goods, or collect accounts, and account for the proceeds derived therefrom, in the absence of an express agreement to the contrary, he would have to account in money, or in some medium of exchange which passed as such. When we have reference, however, to a voluntary sale or disposition of a homestead, within the provisions of section 1158, "proceeds," of necessity, and for the benefit of the owner, must be considered as comprising any tangible thing of value he is willing to accept. The exemption of a homestead, or the proceeds thereof, is grounded on public

policy, and should not be restricted to money only. The different meanings applied to proceeds are shown in volume 6 of Words and Phrases, under the title "Proceeds," commencing on page 5639, to which we refer for further illustration.

Plaintiff's counsel strenuously insist that the ten thousand brick and nothing else constituted the proceeds of the sale or exchange of plaintiff's homestead, and in view that they had not been segregated, that is, set part as his brick, and had not been delivered to nor received by him within a year prior to the levy, that therefore they did not lose their exempt character, and were not subject to sale on execution. Upon the other hand, defendant's counsel contends with equal fervor that the proceeds of sale of plaintiff's homestead consisted of Peterson's promise and obligation to deliver the brick to plaintiff, and that plaintiff accepted this promise, and therefore received it in May, 1903, when the sale of the homestead took place, and that the promise and obligation, that is, the debt owing by Peterson to plaintiff, was exempt for a period of one year and no longer. This brings us to the real question in this case, to wit, what is meant by the phrase in section 1158, in referring to the proceeds, that they shall be exempt "for one year after the receipt thereof?" The section should be construed, if possible so as to carry into effect the obvious purpose and intention of the Legislature in adopting it. Statutes of this kind are grounded upon sound public policy, and thus fall within the category of statutes usually favored by the courts, and hence are generally accorded what is termed a liberal construction, with the view of fully effecting the purpose aimed at by the Legislature in adopting them. While all this is true, courts cannot rightfully extend the period of time within which a certain class of persons may claim designated property as exempt from forced application to the payment of their debts. This power belongs to the Legislature, not to the courts. But this court should not by strict construction frustrate that which the Legislature sought to accomplish; nor should it do this by permitting the case actually presented to be determined upon principles other than

those applicable to the facts, simply because it might be easier to do so, or because from an apparent analogy the case seems to fall within a class of decisions which are, in fact, based upon statutes greatly differing from our own. By adopting section 1158 the Legislature evidently intended that the owner of a homestead should enjoy the fullest opportunity to use and to dispose of it and to have one full year in which to acquire another with the proceeds derived from the first, and for that purpose to be in actual possession of such proceeds, so that he may apply them to the purpose intended. If the Legislature did not intend just this, it would have been easy for it to have limited the time within which another homestead was to be acquired to one year from the sale of the first. The mere fact that the terms "proceeds" and the "receipt thereof" are used is conclusive that it was not intended to limit either the medium that could be accepted, or the time in which it must be received; but the time for which the "proceeds" are exempt only was limited to one year "after the receipt thereof." The owner may thus take sheep, cattle, horses, or any other species of property in exchange for his homestead, and whatever he receives retains its exempt character for the period of one year after he has received it. It is contended, however, that if plaintiff had received sheep, cattle, horses, or a promissory note, or any other tangible property for his homestead, and had not converted what he received into another homestead within one year thereafter, the property received would, after that time, have been subject to levy and sale on execution. This, no doubt, is true, but does the mere promise of Peterson to deliver ten thousand brick not then in existence, and at no time, not even constructively delivered to plaintiff, constitute the receipt of the proceeds for the homestead, as contemplated in section 1158?

It is urged that the promise and obligation of Peterson to deliver the brick constituted the thing of value, that it could have been reached by the process of garnishment, that the plaintiff could have made the promise available by giving an order on Peterson, or by the assignment of the claim.

That plaintiff could have given the order on Peterson for the claim, if he had found some one willing to take it, and that it was a subject of assignment, cannot be doubted. Whether it was subject to successful garnishment, without the consent of plaintiff, is, however, another question. Suppose plaintiff had sold his homestead for cash, or had exchanged it for other property upon an oral promise that the money would be paid, or the property taken in exchange delivered within ten, thirty, or any other number of days; would the time limit of one year begin to run from the date of the sale or exchange, when the promise to pay or deliver was made, or from the time plaintiff received the cash or other property as the consideration for his homestead? If it was intended to limit it from the former, why did not the Legislature fix the time from the sale or exchange rather than from the date of the receipt of either cash or other property agreed to be received? Is it not manifest that the Legislature intended that the owner of a homestead who parts with it should be in actual possession of the means with which to acquire another for the full period of one year after its receipt, and that within that time that which is received for the homestead shall be just as immune against forced seizure or sale under any process as the homestead would be? Why fix the limit of time one year after the receipt of the proceeds, if it was intended to give only one year from the sale or exchange of the homestead? For argument's sake it may be conceded that if plaintiff had taken a promissory note, secured or unsecured, the note and security might constitute the proceeds, but in such a concession is embodied the fact that the note and security would be recognized as property as easily convertible into money or as readily exchangeable for other property as would sheep, cattle, horses, or other personalty. Moreover, it might then be argued that the owner had actually received something tangible. Does a mere oral promise take the place of the proceeds, and the receipt thereof, as mentioned in section 1158? We think not. If such had been the intention of the Legislature, the statute would have been worded differently, as we have already

pointed out. Quite true, if a person exchanges his homestead for nonexempt property, which he cannot convert into a homestead within one year, such property loses its exempt character after that time, and is subject to forced sale. The Legislature, however, it seems to us, clearly indicated that the property agreed to be taken in exchange for the homestead, or in case the property itself is not received, then, at least, that which represents it is a substitute therefor, must be received. In other words, it was intended that the seller should receive something tangible, and not merely an intangible promise or obligation from the purchaser. If, for instance, the owner of a homestead should sell it to his neighbor for $1,000, and the neighbor took possession under a conveyance, but did not expressly promise to pay the amount, and no time for payment being fixed, the law would supply both the promise to pay and a reasonable time within which the payment must be made. In such a case would the implied promise constitute the proceeds, and if not why should any express promise to pay do so? Of course, it might be contended that a promissory note, even if secured, is only the evidence of the promise. But this may be so with regard to bank notes, or some other such evidences that pass as a medium of exchange. They all are matters of substance, however capable of manual delivery and receipt. But the question of whether the receipt of a promissory note would or would not be deemed a receipt of the proceeds under section 1158 is not before us now, and we do not decide that question. We have alluded to it merely to make clearer, if possible, our conclusions. We think, therefore, that the proceeds mentioned in section 1158 has reference to some tangible thing which is the subject of manual delivery and receipt. Further, that "the receipt thereof" likewise means more than a mere right to have or acquire possession of such proceeds. It evidently was not intended that the person who has disposed of his homestead should lose the benefit of the exemption by being compelled to go into court to obtain actual possession of the proceeds. If this were so, the year given him to acquire another homestead might have gone by.

and thus he would be deprived of the means to acquire another homestead. To hold that a mere right to the proceeds, which another may dispute or withhold, constitutes "the receipt thereof," would simply present another case of keeping the word of promise to the ear' while breaking it to the hope. It follows, therefore, that the district court erred in sustaining the demurrer.

The judgment is reversed, the cause remanded, with directions to the district court to overrule the demurrer, grant the defendant leave to answer, if he desires to do so, and to proceed with the case in accordance with the views herein expressed; appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.

### ON REHEARING.

FRICK, J.

An application for rehearing is made in this case in which it is strenuously insisted that this court erred in the conclusion reached. Four reasons are assigned why a rehearing should be granted, namely: (1) That the court erred in holding that the appellant had "sold his homestead for bricks and adobes and not for money;" (2) that the court erred in holding "that the agreement for sale was oral;" (3) that the court erred in holding that appellant "had not received the bricks more than a year before they were taken by appellant (respondent);" (4) that the court erred in holding that the complaint states a cause of action.

As to the first ground, we remark that counsel for respondent has manifestly overlooked or forgotten the construction he placed upon the complaint in his original brief and upon the oral argument in this court. In his brief he says: "The complaint alleges . . . that before the said month of May, 1903, he [appellant] sold said real estate to James E. Peterson for $100, which sum was to be paid by the delivery to plaintiff [appellant] of some brick in the summer or fall of 1904." Then the statement follows in

the brief that the brick were levied on by the sheriff (respondent) by virtue of an execution issued upon a judgment in favor of a third person named. The foregoing statement of counsel is a complete answer to his first objection, in that it concedes that the $100 was merely a statement of the amount due which was to be paid or satisfied by the delivery of the brick.

With respect to the second ground, it is true that the complaint did not in terms allege whether Peterson's promise was evidenced by a writing or not. It was argued by appellant's counsel in their brief, and stated in open court on the oral argument, however, that the promise was oral, all of which was not denied by respondent's counsel. In fact counsel stated in open court that he had no knowledge upon the subject, but contended that this promise, whether oral or written, constituted the proceeds of sale. The case was submitted by both parties upon this theory, and hence decided accordingly.

As to the third ground, we need do no more than to refer to the statement of counsel for respondent with regard to how he understood the complaint. In his brief he says: "From the whole complaint it seems that at the time of the levy by the defendant [respondent] the plaintiff [appellant] did not have the brick upon the new homestead when [where] he said he intended to use them in building a house. . . . The inference is that Peterson had the brick in his possession; the plaintiff [appellant] regarding himself as the actual owner. . . . Admitting that all the allegations of the complaint are true, as we were bound to do, the defendant [respondent] claimed in the lower court that the brick taken as alleged were not exempt as the proceeds of the sale of the homestead of the plaintiff [appellant], which point was raised by the demurrer and sustained." From counsel's own statement, therefore, he presented, and desired to present, but the one question, namely, whether the brick were or were not exempt. We thus deemed it best to avoid all purely technical questions, and did so.

Upon the last ground it is urged that we erred in holding

that the complaint was sufficient to withstand a general demurrer. Upon this point we remark that the complaint was framed upon the theory of trover. Some evidentiary facts were alleged which were not necessary to a complete statement of a cause of action. All of the allegations taken together, however, amounted only to an inartificial statement of a complete cause of action, and the complaint was clearly sufficient within the rule announced by Mr. Justice Straup in *Casady v. Casady* (Utah), 88 Pac. 32. The essential allegations were ownership, unlawful taking, conversion of the brick, and their value. This was alleged, and was admitted by the demurrer; but, as appellant had alleged the judgment, execution, and levy by the respondent, counsel attempted to raise all the legal questions by demurrer to the complaint. He, however, overlooked, and still seems to disregard, the fact that appellant did not allege a sale of the brick on the execution but simply alleged the levy, and then alleged that on a certain day thereafter respondent wrongfully and unlawfully converted the brick to his own use. In the face of these allegations, admitted, as they were by the demurrer, respondent could not have prevailed, although the brick had not been exempt. Respondent could, by virtue of the execution, lawfully seize the brick; but if thereafter, as alleged, he wrongfully and unlawfully converted the same to his own use, he was liable whether the brick were exempt or not. This technicality we overlooked in favor of respondent, because both parties urged at the hearing that they desired the question of exemption determined, and for that purpose the allegations in the complaint were to be deemed sufficient. In deference to the wishes of counsel, we did so. In view of the allegations of the complaint, respondent at least cannot complain.

In connection with the last ground it is finally urged that the final conclusion is inconsistent with the following statement contained in the opinion, namely: "The mere fact that the terms 'proceeds' and 'the receipt thereof' are used is conclusive that it was not intended to limit either the medium that could be accepted, or the time in which it

must be received, but the time for which the 'proceeds' are exempt only was limited to one year 'after the receipt thereof.' " In reference to this statement counsel says: "How the two holdings can be reconciled we do not see, and perhaps it is not necessary that we should." We confess that we did not think the confusion was quite so serious. It is certainly our aim to bring the logic of our statements within the comprehension of counsel. It is quite possible that sometimes we fail in this, but it is equally possible that the fault sometimes is with counsel. Taking the foregoing statement as an illustration, counsel's misconception arises out of the fact that he simply assumes that the "proceeds of sale" are received at the time the promise to pay them is made. He overlooks the distinction between the agreement to pay money or to deliver some other article, and the actual payment or delivery of the article. If counsel's contention that the acceptance of the promise or agreement to pay money, or in lieu thereof, to deliver other articles of value, constitutes receipt of the proceeds of sale, is correct, what is it that the homestead claimant receives when payment or delivery is actually made? In such event does the claimant receive the proceeds of the sale twice, once when he enters into the agreement to receive, and again when he actually receives the money or thing for which he sold or exchanged his homestead? Is not the conclusion palpable that it is the substance received in exchange for the homestead and not the promise to pay or deliver it that is intended in the statute as constituting the proceeds of sale? A promise to pay cannot, by argument, however ingenious, be made the equivalent of actual payment, and hence the entering into an agreement to receive proceeds is not tantamount to the actual receipt thereof. This would be so whether the promise was oral or in writing.

Counsel's suggestion that, if it be held that the acceptance of the promise or agreement to receive does not constitute the receipt of the proceeds, the seller of the homestead may sell on time and thus hold the proceeds as an investment free from execution does not necessarily follow. The statute was

32 Utah—27

enacted for his protection and to insure for himself and family a home. When a case arises where it appears that the homestead claimant is evading the statute, it will then be proper for the court to pass upon the question whether the homestead claimant is entitled to the exemption or not in view of the facts involved. This case is free from such complications, and hence should not be hampered with them, although a possibility may exist that they may arise in some assumed case. In this case we held that the acceptance of a mere promise to deliver brick did not constitute the receipt of the "proceeds of sale," although the brick may constitute such proceeds; that an agreement to pay the proceeds at some future time was not tantamount to the receipt thereof; and that the acceptance of a promise to pay may be one thing, and the fulfillment thereof quite another thing.

No valid reason having been advanced why a rehearing should be granted, the application therefor should be, and accordingly is, denied.

McCARTY, C. J., and STRAUP, J., concur.