MARY VITTENGL, Appellee, v. JOSEFA VITTENGL and JOSEPH MARAK, Appellants.

**Judgments:** DIVORCE AND ALIMONY: EFFECT. The entry of a judg-1 ment against a married man, pending a suit for divorce in which his property was attached by his wife to secure her alimony, became a lien against his nonexempt real estate at the date of its entry; and the lien was unaffected by a decree of divorce, to which the judgment creditor was not a party, awarding the property to the wife subject to liens prior to her attachment.

**Same:** HOMESTEAD: ABANDONMENT: BURDEN OF PROOF. Where actual 2 occupancy of a homestead had ceased by the wife before entry of judgment against her husband, the burden was upon her to show a definite and fixed purpose to return in order to preserve and maintain her homestead rights, and avoid the effect of the judgment.

**Same.** Where both the husband and wife left their homestead in-3 tending to return, but while absent the husband abandoned his family and went to another state, his agency for the family ceased at that time and his intent thereafter regarding the homestead was not controlling as to the wife.

**Same.** One not in the actual possession of a homestead but having 4 a definite and fixed intention of returning and occupying the

same, does not abandon it by making a contract of sale with the intent of investing the proceeds in a new homestead when the sale is consummated; the intent to return not having been otherwise changed.

Real property: CONTRACT OF SALE: RESCISSION: FORFEITURE. The provision in a land contract that if the title to the property can not be made good within a certain time in the judgment of a third person, the earnest money shall be returned and the contract canceled, is one for rescission and not forfeiture, and therefore the statute requiring notice of forfeiture is not applicable; and the mistaken claim of the purchaser and such third person that the title can not be made good except upon payment of a certain mortgage authorized the grantor to rescind.

Specific performance: RELIEF TO PARTY DENIED PERFORMANCE. Although the purchaser in this case was not entitled to specific performance of the contract, the vendor having exercised a right of rescission, still as he had in good faith deposited money to pay the amount of a mortgage on condition that he have the same assigned to him, and the money was so applied to the benefit of the vendor, though without specific authority or assignment of the mortgage, the purchaser was entitled to a decree requiring the vendor to repay the amount or to subrogate him to the lien of the mortgage, on the ground that the money was used by mistake to discharge the same.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL, Judge.

FRIDAY, MARCH 15, 1912.

ACTION to quiet title. It was brought against the defendant Josefa Vittengl as sole defendant. The petition was in the statutory form. The real purpose of the action, however, was to remove from plaintiff's title the cloud of an apparent lien of a judgment held by the defendant Josefa against the former husband of the plaintiff. The defendant set up such judgment, and asserted her alleged lien. Marak came into the case as an intervener. He set up a contract of purchase of the premises described in the petition from the plaintiff, and prayed specific performance. There was a decree for the plaintiff as against both

the original defendant and the intervener, and both of these have appealed.—*Modified; affirmed; remanded.*

*W. J. Baldwin* and *Ed Sulek* for appellants.

*Crosby & Fordyce* and *Remley & Calkins* for appellee.

EVANS, J.—We will deal first with the controversy as made between the original parties to the case. The property involved was formerly the property of the plaintiff and her former husband. It consists of eighteen acres of farm land and a half dozen lots in the unincorporated village of Shueyville, in Johnson county. It was actually occupied by the plaintiff and her husband from the spring of 1906 to the spring of 1908. Thereupon they leased the place to a renter for one year, beginning March 1, 1908. They moved to Cedar Rapids, eight miles distant, where the husband had obtained temporary employment. They left all their farm machinery upon the place, intending to return thereto, as contended by the plaintiff. Before the expiration of the lease, they renewed it for another year. The plaintiff and her husband were not living happily together. Some time before March, 1909, he abandoned her and went to California. There was one child of the marriage, aged about two years, and this was left in the custody of the mother. In March, 1909, she began an action for divorce against her husband, and caused a writ of attachment to issue therein, and to be levied upon the property in protection of her alimony. In September, 1909, she obtained a decree of divorce. This decree awarded to her the custody of the minor child, and the ownership of the real estate referred to, subject to liens existing prior to the date of her attachment. Some days before the decree in her favor was entered, a confession of judgment was duly filed against her husband, and in favor

of the present defendant Josefa Vittengl for $624. This is the judgment over which the controversy has arisen.

The defendant contends that the judgment became a valid lien against the property as soon as entered, and that it has therefore continued as such lien ever since. To this contention the plaintiff's response is threefold. She contends: First. That the property was awarded to her by a decree of the court subject only to liens existing prior to her attachment. Second. That the confession of judgment was fraudulent and collusive between her husband and the defendant Josefa, and that it is therefore void as against her. She also avers that the defendant, Josefa, employed her attorney to appear for the defendant husband in the divorce proceedings for the purpose of delaying the trial, and thereby enabling her to obtain the confession of judgment, and to cause the same to be entered prior in time to plaintiff's decree of divorce, and that she is therefore bound by the provisions of the decree finally entered. Third. She also contends that the property in question was her homestead, and that she had never abandoned the same, notwithstanding her temporary departure therefrom, and that, therefore, the defendant's judgment never became a lien upon the property.

The defendant Josefa is the mother of Anton Vittengl, the plaintiff's former husband. The evidence does not warrant the contention that she appeared by attorney or otherwise, nor that she employed an attorney to appear for the defendant in the divorce case. Neither will the evidence warrant a finding that the indebtedness for which the confession of judgment was entered was fraudulent or collusive. The defendant Josefa had become a surety for her son on two promissory notes which she was compelled to pay after his departure. The first suretyship was incurred two or three years before the beginning of the divorce suit, and the second was incurred on January 18,

1909. She was therefore a *bona fide* creditor and was entitled to her judgment.

I. Disregarding the question of the homestead for the moment, we think it must be held, also, that the judgment became a lien upon the property if not exempt, as soon as

1. JUDGMENTS: divorce and alimony: effect.

entered, and that it was not divested by the mere decree of the court, in the divorce case to which the defendant Josefa was not a party. This point is ruled squarely in *Daniels v. Lindley*, 44 Iowa, 567.

We turn, then, to the homestead question. Inasmuch as the actual occupancy of the homestead had ceased in March, 1908, the burden was upon the plaintiff to show

2. SAME: homestead: abandonment: burden of proof.

that there was a definite and fixed purpose to return in order to preserve the homestead character and maintain her homestead rights. *Maguire v. Hanson*, 105 Iowa, 215; *Conway v. Nichols*, 106 Iowa, 358; *Kimball v. Wilson*, 59 Iowa, 638; *Newman v. Franklin*, 69 Iowa, 244.

It is shown by appropriate testimony that, when the parties left the homestead, they were intending to return to it. It is also fairly shown that this purpose continued

3. SAME.

on the part of the plaintiff at least down to November, 1909. Manifestly the husband abandoned such intention when he abandoned his family, and went to California. But his agency for his family ceased with the formation of his intent to abandon it. His intent from that point to abandon the homestead was therefore not controlling. And this disposes of the question whether his conduct in writing from California and offering to sell the place can be considered as an act of abandonment binding upon his family.

On the 10th of November, 1909, however, the intervener, Marak, called upon the plaintiff at Cedar Rapids, and offered her a price for the place which she decided to accept, with the intention on her part to use the pro-

ceeds in the purchase of another homestead. A written
contract was entered into on the same day
4. SAME.        whereby the plaintiff undertook to sell, and
Marak to buy, the property. This contract contained
a provision for its rescinding · in case the title could
not be made satisfactory before March 1, 1910. This
contract was not in fact performed, and the plaintiff
returned to her alleged homestead about March 1, 1910,
and has occupied the same ever since. The difficult ques-
tion which has been argued by the parties is whether this
contract of sale should be deemed as an abandonment of
the homestead.

As already indicated, we have held that, in order to
preserve the homestead character in the absence of actual
occupancy, there must be a continuing, definite, and fixed
purpose to return. When such purpose ceases, the abandon-
ment becomes complete. There is much reason, therefore,
for saying that, when a contract of sale is entered into by
the owner when he is not in actual occupancy of the
premises as a homestead, such a contract is inconsistent
with a definite and fixed purpose to return. On the other
hand, we have held repeatedly that the owner of a home-
stead may change his homestead, and that he may sell the
old and acquire a new one without any interruption in
his homestead rights, and that he is entitled to a reason-
able time to accomplish such change. *Pearson v. Minturn,*
18 Iowa, 36; *Sargent v. Chubbuck,* 19 Iowa, 38; *Robb v.
McBride,* 28 Iowa, 386; *Benham v. Chamberlain,* 39 Iowa,
358; *State v. Geddis,* 44 Iowa, 537; *Lay v. Templeton,*
59 Iowa, 684; *Cowgell v. Warrington,* 66 Iowa, 666.

The contention of appellee is that, when she decided
to sell, such decision was with the intent to purchase a new
homestead with the proceeds of the old, if her contemplated
sale were finally consummated. Such intention to acquire
a new homestead is not necessarily inconsistent with the
previous intention to return to the old homestead. The

question is difficult in the sense that the intent to change from the old to the new homestead gives a certain quality of contingency to the purpose to return to the old homestead. Unless appellee's contention is good at this point, however, then there is no way whereby the owner of a homestead can safely dispose of it as such with the intent to purchase another homestead, unless he is in the actual occupancy of the old homestead. This would reduce the law to somewhat of an absurdity at this point. The law treats the right of homestead as a continuing one regardless of the change from the old to the new. If the plaintiff had purchased a new homestead on November 10th, the date of her sale contract, she could have claimed exemption for such new homestead against appellant's judgment lien. If, however, such judgment lien attached to the old homestead the moment that its sale was attempted, then the practical effect of such result would be to prevent the exchange altogether. If the homestead character was preserved up to the date of the contract of sale by reason of a definite and fixed purpose to return on the part of the appellee, then it was her homestead in every legal sense. And we think it must be said that she had as much right to exchange it at that time for a new homestead or to sell it with intent to purchase a new homestead, as though she were in the actual occupancy. The question at this point must usually be one of fact as to whether the purpose to return had ever lost its definite and fixed character before the intent to purchase a new homestead with the proceeds of the old was formed. In the case before us, there is much in the circumstances to corroborate the testimony of the appellee as to her intention, and some of these circumstances will appear in the other branch of this opinion.

There is another consideration that is quite conclusive in appellee's favor at this point The appellant's judgment was not against her. She became the owner of the property by a decree of the court in the divorce action

in September, 1909. If the homestead character of the
property was preserved up to that date, the appellant's
judgment against the husband, Anton, was not a lien there-
on when the appellee acquired the same. If it was not a
lien on the property before the appellee acquired it by her
decree, it could never become a lien therafter. And this
is so, even though appellee had abandoned her homestead
thereafter. If we should hold, therefore, that the contract
of sale of November 10th amounted to an abandonment of
the homestead on her part at that time, it would be effective
only to subject such property to the payment of her own
debts, and not to those of her former husband. We reach
the conclusion, therefore, that the appellee's plea of home-
stead right must be sustained.

II. We pass now to a consideration of the rights of
the intervener, Joseph Marak. As already indicated, his
contract was entered into November 10, 1909. The contract
was written upon an ordinary blank form of
land sale contract making time of the essence
of the contract, and providing for strict per-
formance and forfeiture. The contract price
was $2,500 of which $50 was paid down, and the balance
of which was to be paid March 1, 1909. The contract also
contained the following written proviso: "It is understood
that the title of the grantor rests upon a decree rendered
by the district court of Linn county, Iowa, in October,
1909, and that the title is to be approved by Ed Sulek,
and if, in his opinion, the same can not be made good by
grantor by March 1, 1910, then the said $50 is to be re-
turned and this contract canceled." Sulek was the attorney
for the husband in the divorce suit and for the mother,
Josefa, in the obtaining and filing of the confession of
judgment. This contract proved a source of controversy.
Within a month after the contract was entered into, Sulek
examined the title, and furnished certain written criticisms
thereof. We need only consider one for the purpose of

5. REAL PROP-
ERTY: contract
of sale: rescis-
sion: for-
feiture.

this case. Sulek held that the judgment of the appellant
Josefa was a lien upon the property, and this contention
has been maintained ever since by intervener, Marak, and
by his attorney. Execution was issued under the judg-
ment and levied upon the property, and the intervener bid
at the execution sale. We are unable to determine from
the record before us just what was done. It is contended
by intervener that he purchased the land at execution sale
under such judgment for the amount thereof. The amount
of his bid, however, under some arrangement or direction
was held by the sheriff to await the outcome of this litiga-
tion and no return of the execution was ever made. When
appellee acquired 'the land, it was subject to two mortgages
of $1,100 and $400, respectively, with considerable unpaid
accrued interest on each. The intervener was claiming the
property under his contract, and on March 2d entered into
forcible possession of a part of it. He was ready and
willing to pay the purchase price, but insisted upon paying
the same upon the liens and included in his insistence
the alleged lien of the aforesaid judgment. Whether such
judgment was a lien upon the property has been the bone
of contention between the intervener and the appellee. Be-
cause of such contention the appellee purported to rescind
the contract of sale under the provision above quoted.
She paid into court for the benefit of intervener the $50
advance payment made by him, and declared a recission.

This feature of the case has been argued by appellants
on the theory that she had declared a forfeiture under the
forfeiture provision of the contract. Appellants have there-
fore argued that the forfeiture was ineffective under the
statute because no thirty days notice of forfeiture was
given. There can be no controversy over this question as
a legal proposition. The appellee does not claim to have
declared a forfeiture, nor is she in any position where she
could claim it, for want of proper notice. The provision
of the contract which we have above quoted is not a pro-

vision for forfeiture. It provides only for a rescission
and a putting of the parties *in statu quo* in case the title
is not "approved by Ed Sulek." It is undisputed that the
title was not approved by Sulek, nor could it be made satis-
factory except by the payment of the judgment. According
to our holding in the foregoing division of this opinion,
the intervener and his attorney were not justified in this
claim. Clearly, therefore, the contingency provided for in
the contract existed on March 1, 1910, and for some weeks
prior thereto. Either party then was entitled to rescind.
It is argued by appellant that the option in such a case
was with Marak. If that be granted, it was only an
option to perform the contract, and waive his unwarranted
objection to the title. This he did not do. The trial court
was therefore warranted in treating the contract as.
rescinded and in awarding to Marak the return of the $50.

III. The case has another complication. While the
controversy was pending between Marak and the appellee,
the holder of the second mortgage began a foreclosure
proceeding and Marak undertook to protect

6. SPECIFIC PER-
FORMANCE: re-
lief to party
denied per-
formance.

the title of himself and grantor as against
further expense. He thereupon deposited in
the office of the clerk of the district court
$1,688.42 under conditions which are abstracted to us as
follows: "Stating that Mr. Marak deposited $1,688.42 with
request to pay Clay Bowersox upon presentation of mortgage
of amount due and interest, and to pay Vanchura, and
balance to be paid Mary Vittengl, and also directing that
upon Clay Bowersox accepting money of the mortgage to
have it assigned to Mr. Marak." This amount was intended
to cover both mortgages. Bowersox held the first mortgage.
He also acted as agent to some extent for the holder of the
second mortgage. Of the amount so deposited, Bowersox
drew $492 in payment of the second mortgage, and such
mortgage was surrendered and canceled by the holder.
Appellant Marak contends that this was done at the re-

quest and under the authority of the appellee, and that such act amounted to an acceptance on her part of the $492 on the contract price, thereby confirming the contract. The deposit by Marak and the withdrawal by Bowersox was done after the commencement of this suit, and before the trial. The evidence does not warrant the claim that this was done under any actual authority from the appellee and the trial court properly so held. We think, however, that this circumstance should not have been ignored in the final decree. The dispute between the parties was *bona fide.* Marak acted in good faith in the deposit of the money. It is doubtful, at least, whether the terms of the deposit justified the clerk in paying out the amount. There is no question, however, about his good faith. He notified appellee's attorneys by letter. They sent the letter to Bowersox. Bowersox notified the appellee. Appellee notified. Vanchura, her father, who in the meantime had become the owner of the second mortgage by purchase. Bowersox also notified Stansbury who had loaned to Vanchura $300 to enable him to make the purchase of the mortgage and who had possession of the mortgage as security for such loan. Stansbury directed Bowersox to draw the money. This was acceded to by Vanchura. Bowersox thereupon did draw the money, and paid $300 thereof to Stansbury and the balance to Vanchura. The net result of the whole transaction was that the plaintiff obtained the full benefit of the amount drawn by the satisfaction and discharge of a valid mortgage against her property. The conditions of deposit imposed by Marak were that the mortgage should be "assigned to him." This condition seems to have been overlooked. Bowersox also purported to act "for Mary Vittengl," the appellee. He also acted in good faith, though without direct authority. His action in her behalf was to her advantage.

We can see no reason in equity or good morals why she should not be required to pay the amount so applied

to her benefit and under her purported authority, ·or that intervener should be subrogated to the lien of the mortgage on the theory that his money was appropriated by mistake to the discharge of the mortgage. The decree as actually entered only required her to pay the sum of $50, being the amount of advance payment made on the contract. We think this further condition should be imposed, and the decree will be modified accordingly. The case will be remanded to the lower court for final decree consistent herewith, with full power to take additional testimony upon this question if deemed necessary. We are not able to determine with certainty from the record before us whether the amount drawn was $492 or $432. It appears in both forms in the printed matter before us. The record is also very indefinite in some other respects in relation to this feature of the case. We deem it proper therefore to reserve jurisdiction thereof to the trial court and to remand it for such purpose.

To this extent the decree entered below will be modified and in all other respects affirmed.—*Modified; affirmed; remanded.*