E. G. FARDAL, Administrator, Appellee, v. ELLA B. SATRE, Appellant.

**HOMESTEAD: Abandonment—Burden of Proof.** Ceasing to occupy a
1 homestead creates a presumption of abandonment, and the burden of proof is on the claimant to overcome the presumption by showing a fixed and definite purpose to return to the homestead. Burden held amply sustained.

**HOMESTEAD: Change of Homestead—Exemption of Proceeds.** A
2 homesteader who exchanges his homestead for other property— even for property other than money—may, for a reasonable time, hold exempt the property so received, when he made the exchange in the then bona-fide intent to acquire a new homestead with the proceeds.

Headnote 1:  29 C. J. pp. 961, 962, 965.  Headnote 2:  29 C. J. p. 836.

*Appeal from Hamilton District Court.*—SHERWOOD A. CLOCK,
Judge.

NOVEMBER 24, 1925.

A motion by the defendant to discharge attached property
on the ground that it was exempt as the proceeds of an exempt
homestead intended for reinvestment in a new homestead was
denied, and defendant appeals.—*Reversed.*

*Henderson & Jones,* for appellant.

*Burnstedt & Hemingway,* for appellee.

VERMILION, J.—In an action by appellee upon a promissory
note signed by appellant, an attachment was issued and levied
on certain real and personal property belonging to appellant.

1. HOMESTEAD:
abandonment:
burden of proof.

A motion to discharge the attached property,
on the ground that it was the proceeds of the
sale or exchange of a homestead, intended to be
invested in another homestead, was denied.

The concrete facts are not in dispute. The appellant is
the wife of H. E. Satre, and they have two minor children.
Prior to the transaction here involved, appellant was the owner
of a residence in Stanhope, Iowa, which was occupied by the
family as a homestead. In 1923, $6,000 was borrowed, secured
by a mortgage on the property; and a portion of the amount
was invested in a business at Jefferson, Iowa, which was con-
ducted by appellant's husband. On November 7, 1923, the
husband rented a dwelling in Jefferson for a term of fourteen
months, and the family moved there. Some articles of house-
hold furniture were left in the Stanhope house, and it was rented
from month to month to a tenant. On January 29, 1924, the
Stanhope property was exchanged for a residence property and
certain vacant lots in Stanhope, the undivided interest of the
person with whom the exchange was made in an unsettled estate,
and certain personal property. The attachment was levied on
all the property so received in exchange for the Stanhope home-
stead.

There is no claim that the Stanhope property, so long as it remained the homestead of appellant, was subject to the debt evidenced by the note sued on. It is the contention of appellee that the homestead at Stanhope was abandoned on the removal of the family to Jefferson, and that, in any event, the property levied on is not exempt as the proceeds of the homestead. Appellant, on the other hand, contends that there was no abandonment of the homestead, and that it was, at the time the exchange was made, and is now, her intention to use the property for which the homestead was exchanged in the acquisition of a new homestead, and that such property is, therefore, exempt.

I. The existence of a homestead right does not arise from mere intention. *Hostetler v. Eddy,* 128 Iowa 401. Actual occupancy of the premises as a home for the family is necessary to create the right, and, save in the case of a temporary absence, to continue it. *Maguire v. Hanson,* 105 Iowa 215.

The rules of law by which it is to be determined whether there has been an abandonment of the homestead have been often reiterated by this court, and are well settled. A succinct statement of them is to be found in *Maguire v. Hanson,* supra.

Where the removal is for a temporary purpose, and there is a fixed and settled intention, continuously and in good faith held, to return to the homestead, there is no abandonment. *Repenn v. Davis,* 72 Iowa 548; *Boot v. Brewster,* 75 Iowa 631; *Ayers v. Grill,* 85 Iowa 720; *Zwick v. Johns,* 89 Iowa 550; *Robinson v. Charleton,* 104 Iowa 296; *Maguire v. Hanson,* supra. Where the actual occupancy of the homestead has ceased, there arises a presumption of abandonment, and the burden is upon the one claiming the homestead right to show that there was a fixed and definite purpose to return. *Newman v. Franklin,* 69 Iowa 244; *Maguire v. Hanson,* supra; *Conway v. Nichols,* 106 Iowa 358; *Vittengl v. Vittengl,* 156 Iowa 41; *Shaffer v. Miller,* 195 Iowa 891.

The question is one of intention, and that must usually be determined from the testimony of the parties, in the light of the surrounding circumstances.

The appellant testified that she moved to Jefferson with the intention of keeping house and taking care of her family and being with her husband while he was in business there; that

they moved with the intention of coming back to Stanhope; that she had no definite and fixed time for coming back; that it depended on how they "made it out" in Jefferson. On cross-examination she testified that her husband had been charged with bootlegging, and that they decided to move to Jefferson for a while; that she didn't intend to stay there, and didn't know how long they would stay; that they intended to stay for a while, if they could succeed; that they had leased a house for fourteen months, and expected to stay that long. Appellant's husband testified that they moved to Jefferson experimentally—to see how it would go; that they expected eventually to come back to their home in Stanhope; that he and his wife talked about that. He testified on cross-examination that his purpose in going to Jefferson was to take care of the business he had bought there. He said: "Well, our intentions were—we left with the intention of coming back." There is no contradiction of this testimony in the record, and no facts or circumstances shown inconsistent with an intention on the part of appellant to return to the Stanhope homestead.

It appears that both appellant and her husband were desirous of leaving Stanhope because of the trouble the latter had had, and his inability to find employment there; and there had been some talk of selling the home, particularly before the mortgage of $6,000 was placed on it. But it is shown that their object in wishing to sell was to acquire a homestead elsewhere. The desire to sell one homestead for the purpose of acquiring another is not indicative of an intention to abandon the first. *Robinson v. Charleton*, supra; *Vittengl v. Vittengl*, supra. At the time of the removal, there appears to have been no present intention to sell the Stanhope homestead, or to return only in the event that they could not sell it, as was the case in *Conway v. Nichols*, supra. It is shown that a portion of the household goods was left in the Stanhope residence at the time the family removed to Jefferson.

The homestead law, being an exemption statute, is to be liberally construed to effectuate its intent and purpose. *Schuttloffel v. Collins*, 98 Iowa 576; *Cook v. Allee*, 119 Iowa 226; *Lames v. Armstrong*, 162 Iowa 327.

We are of the opinion that the appellant sustained the bur-

den of establishing that the removal was with the fixed and definite intention of returning to the Stanhope homestead, and that a finding that the homestead was abandoned would be without support in the record.

II.  Section 10154, Code of 1924, provides that, where a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from
2. HOMESTEAD: execution in all cases where the old or former
change of home- one would have been.  We have held that,
stead: exemp-
tion of proceeds. where a homestead is sold with the intention of investing the proceeds in a new one, the owner is entitled to a reasonable time within which to accomplish the change.  *Benham v. Chamberlain & Co.*, 39 Iowa 358; *Cowgell v. Warrington*, 66 Iowa 666; *Vittengl v. Vittengl*, supra.

In *State v. Geddis*, 44 Iowa 537, and *Schuttloffel v. Collins*, 98 Iowa 576, it was held that it was not necessary that a sale of the homestead be for money in hand, and that, where the sale is made on credit, with the intention of using the proceeds, when collected, in the purchase of another homestead, and the proceeds are not put to any intervening use, they are exempt while thus *in transitu* from the old homestead to the new.

In *Mann v. Corrington*, 93 Iowa 108, we said that a homestead right may exist in vacant land for which a homestead has been exchanged, when the land was thus obtained and is held in good faith for use as a home, although it cannot be improved and a dwelling house erected on it with the proceeds of a former homestead.  See, also, *Blue v. Heilprin & Co.*, 105 Iowa 608.

In *Jones v. Brandt*, 59 Iowa 332, we said:

"Whether the proceeds of a homestead shall become liable for debts depends always upon the manner of dealing with it."

Webster defines proceeds as that which results, proceeds, or accrues from some possession or transaction.  In *Phelps v. Harris*, 101 U. S. 370 (25 L. Ed. 855), the United States Supreme Court said:

"Proceeds are not necessarily money.  This is also a word of great generality."

The legal definition of "proceeds" was said, in *Tradesmen's Nat. Bank v. National Sur. Co.*, 169 N. Y. 563 (62 N. E. 670), to be money or other articles of value obtained from the

sale of property. In *Hunt v. Williams,* 126 Ind. 493 (26 N. E. 177), it was said:

"The word 'proceeds' is one of equivocal import and of great generality. It does not necessarily mean money; its meaning in each case depending very much upon the connection in which it is employed and the subject-matter to which it is applied. *Phelps v. Harris,* 101 U. S. 370; *Thompson's Appeal,* 89 Pa. St. 36; *Dow v. Whetten,* 8 Wend. 160; *Haven v. Gray,* 12 Mass. 74. Strictly speaking, it implies something that arises or leads out of or from another thing * * *."

The Supreme Court of California has said that it is "a word of loose and varying significance." *Kidwell v. Ketler,* 146 Cal. 12 (79 Pac. 514). In *Sprecht v. Parsons,* 7 Utah 107 (25 Pac. 730), it was said:

"The term 'proceeds' of a disposition of property can be construed to mean money or other property."

In *People ex rel. Hanberg v. City of Chicago,* 216 Ill. 537 (75 N. E. 239), the question was whether certain land was subject to taxation under a constitutional provision that all lands donated or granted for school purposes and the proceeds thereof should be applied to the objects for which the gift or grant was made, and the court said:

"These premises, having been received in exchange for another portion of School Section No. 16, are to be regarded as 'proceeds' of lands granted by the general government for school purposes. * * * What is the meaning to be given the word 'proceeds' when lands are the subject-matter to which it is to be applied? If the title of land is disposed of, that which is received therefor, whether money or other lands, is, as we have seen, properly called the 'proceeds' of the land."

The meaning of the word in a statute exempting the proceeds of a sale of the homestead for one year was under consideration in *Christensen v. Beebe,* 32 Utah 406 (91 Pac. 129), and it was said:

"When we have reference, however, to a voluntary sale or disposition of a homestead, within the provisions of Section 1158, 'proceeds,' of necessity, and for the benefit of the owner, must be considered as comprising any tangible thing of value he is willing to accept. The exemption of a homestead, or the proceeds

thereof, is grounded on public policy, and should not be restricted to money only.''

The statute is a statute of exemption, and is, as we have said, to be liberally construed, to effectuate its purpose. We are clearly of the opinion that the term ''proceeds,'' as used in the statute, is broad enough to exempt a new homestead actually procured by the exchange for it of property, of whatever kind, received in exchange for the old one, or purchased with money realized from the sale of such property, when that was the purpose of the owner in disposing of the first homestead. It follows from this that property received in exchange for the old homestead with the intention of using it in acquiring another homestead is also exempt for a reasonable time.

The question of the exemption of the proceeds of a homestead intended to be used in acquiring a new homestead is wholly one of the intention of the owner. Creditors who had no right to resort to the old homestead cannot be injured by the exemption of the new one to the extent of the value of the old one entering into it, nor by the exemption for a reasonable time of the proceeds of the old, in whatever form, intended in good faith to be invested in a new homestead. What would be such a reasonable time might depend on many circumstances, but that question is not before us.

Here there can be no doubt, under the record, of appellant's intention at the time of the exchange to use the proceeds of the old homestead in acquiring a new one. Of the property she received in exchange for the old homestead, the personal property was readily convertible into money; the estate in which she took an assignment of an interest would, presumably, be settled by a distribution of money; a purchaser was ready to take the residence property at an agreed price; and the other real estate was of a character to be more or less readily sold. The evidence shows that she had under consideration the purchase of a particular dwelling in Jefferson when the attachment was levied.

We reach the conclusion that there was no abandonment of the Stanhope homestead, and that the property received in exchange for it was, at the time of the levy, and for a reasonable time, ·exempt, as the proceeds of a homestead intended to be

invested in a new homestead; and that the attached property should, therefore, have been discharged.

The judgment must be and is—*Reversed.*

FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, and ALBERT, JJ., concur.