VIOLA CAMPBELL, Appellee, v. JAMES CAMPBELL, Appellant.

**DIVORCE:** Evidence—Degree of Corroboration. Admittedly slight
1   corroboration may be sufficient.

**DIVORCE:** Alimony—Proper Amount. Record reviewed, and *held*
2   that an allowance of alimony in the sum of $15,000 was not un-
reasonable.

*Appeal from Webster District Court.*—R. M. WRIGHT, Judge.

NOVEMBER 21, 1922.

ACTION for divorce. Decree of divorce and alimony for
plaintiff. Defendant appeals.—*Affirmed.*

*Healy & Breen,* for appellant.

*Mitchell & Files,* for appellee.

STEVENS, C. J.—I. Plaintiff and defendant were married
October 12, 1904, and have one son, George, who, at the time of
the trial, was 11 years of age. The ground alleged for a divorce

is cruel and inhuman treatment, such as to en-
1. DIVORCE: danger the life of plaintiff. According to the
evidence:
degree of testimony of plaintiff, the trouble began on the
corroboration. night of their marriage, when she claims that
the defendant brutally caused her to suffer an extensive vaginal
laceration, which has since troubled her. She admitted that
this act, which is denied by appellant, destroyed her love for
him, and testified that, during the entire period of their married
life, he has been abusive, calling her vile names and epithets;
that he has been neglectful, and, for the last 6 or 8 years, has
contributed nothing of a substantial nature to her support; that,
upon one occasion, he struck and beat her over the head with
his fist, inflicting very painful and serious injuries. Appellant
admits that he slapped her a couple of times upon this occasion,

but denies that he injured her to any extent. The immediate cause of the quarrel was the attempt of appellant to prevent appellee from inflicting more severe corporal punishment upon George than he thought the offense committed by him merited. It will serve no good purpose to detail the evidence showing the domestic infelicity of these parties. The showing made by appellee is by no means overwhelming, and no doubt she was also more or less to blame. Appellant contends that the claim of appellee is not corroborated. The corroboration is somewhat slight, and consists almost entirely of the testimony of their minor son. Although quite young, he testified that he remembered the occasion when appellant struck appellee, and that he frequently heard him use vile language toward his mother. We think the corroboration, although rather slight, sufficient.

II. The court below awarded the custody of the minor child to plaintiff, gave her their homestead, worth about $5,000, and judgment for $10,000 alimony. No particular complaint is made by appellant of the award of the homestead to appellee, but it is vigorously asserted in argument by counsel for him that the sum allowed as alimony is exorbitant and unreasonable.

2. DIVORCE: alimony: proper amount.

Appellant is possessed of equities in considerable property of more or less doubtful value. He is indebted to many banks and individuals, which debt, in the aggregate, amounts to approximately $100,000. Appellee signed notes with him for a few thousand dollars, which, at the time of the trial, were unpaid. About 8 years before the trial below, appellee inherited from her father's estate a farm of 160 acres, incumbered by a mortgage of $6,500. One 80 of the farm was sold, and the proceeds applied to the payment of appellant's indebtedness. She also loaned him various sums on different occasions, amounting, with the above, to $18,000 or $19,000. This, appellant subsequently paid, by the transfer of 190 shares of the capital stock of a Canadian corporation. The stock was fairly worth, at the time, $19,000. Appellant retained a large number of shares of stock in the Canada corporation, all of which, at the time of the trial, was held by his creditors as collateral; but the value of the stock considerably exceeded the amount of indebtedness secured there-

by. This stock was worth about $37,500. Appellant owns a tract of land on the Rio Grande River in Texas, for which he paid about $40,000, and a brick and tile plant at Lehigh, which cost him $40,000 or $50,000. He testified that the Texas land was without any substantial value, and that he could not estimate the value of the Lehigh plant. The Lehigh plant was operated until five or six years before the trial, when, on account of the reduced demand for its products, it was closed. The evidence fairly shows that it could not have been profitably operated since that time, and that its value has considerably depreciated during the time it has been idle, and must depend largely upon the creation of a new demand for its products. Appellant also owns a half section of land in Minnesota, together with a considerable quantity of stock and machinery thereon. At the time of the trial, he was being closely pressed by creditors, and suits in which attachments had been issued, were pending against him. While the value of his property is more or less doubtful, we think that the award of the court below is not unreasonable.

His financial embarrassment is probably temporary, and we are in no better position to fix the value of his various holdings than was the court below. He was himself unwilling to hazard an estimate as to the value of the Lehigh plant. Upon a careful consideration of all of the testimony, we reach the conclusion that the decree and judgment of the court below should be affirmed. It is, therefore, so ordered.—*Affirmed.*

WEAVER, FAVILLE, and DE GRAFF, JJ., concur.