L. W. SCHAFFNER, Appellant, v. VIOLA CAMPBELL, Appellee.

**HOMESTEAD:** Abandonment—Intent to Return. Loss of homestead
1  exemption is not favored. The contention that the homestead was left with the specific intent to return at some future time, depending on conditions, is not necessarily overthrown by evidence that the homestead was offered for sale, and that other property was purchased as a place in which to live, and by a later recital in divorce proceedings that the residence of the parties was in another city in the same county in which the homestead was situated. ·

**NEW TRIAL:** Grounds—Newly Discovered Cumulative Testimony.
2  Newly discovered testimony, of a cumulative but noncontrolling character, is not necessarily sufficient to demand a new trial.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

JUNE 24, 1924.

ACTION in equity, to establish plaintiff's judgment·liens on real estate, the same being a residence property situated in the small town of Lehigh, Webster County, Iowa. The contention of appellee is that the property was a homestead, and that the removal therefrom to Ft. Dodge was temporary, and that, therefore, plaintiff's judgments were not liens. The trial court found for the defendant. Plaintiff appeals.—*Affirmed.*

*Kelleher & Mitchell* and *Healy & Breen,* for appellant.

*Mitchell, Files & Mulholland,* for appellee. ·

PRESTON, J.—The case presents a question largely of fact. Practically the only evidence is that of the defendant, who was called as a witness for the plaintiff. The plaintiff also offered a transcript of defendant's evidence given in her divorce case. Defendant's husband was not called as a witness, and his whereabouts at the time of the trial of this case were unknown to appellee. Plaintiff also offered in evidence a brief excerpt from the transcript of the testimony of defendant's husband in the divorce case. The substance of this is that, at about the time of the divorce suit, and while he and his wife were having their troubles, he offered to sell the Lehigh property for $5,000, but it was not sold. This was not necessarily an abandonment. 29 Corpus Juris 940. This was in connection with his testimony as to his property, and as bearing on the question of alimony, as we take it. The homestead character of the Lehigh property was not in issue in the divorce case, although the decree awarding it to plaintiff describes it as the homestead. The issue, of course, in the divorce case was as to whether plaintiff had grounds for divorce, and the question as to alimony and custody of the child. Appellee challenges the competency of the transcript as to the evidence of the husband, under Section 245-a, Code Supplement, 1913.

1. HOMESTEAD: abandonment: intent to return.

It appears that the defendant and James Campbell were married in 1904. In 1907, the Lehigh property was purchased, and the title taken in the name of the husband. It was purchased originally for $3,000, paid by the husband. She inherited considerable property from her father, and after the purchase, she expended $3,500 of her own money in improving the homestead. Both had considerable property, but they became more or less involved. She signed mortgages with her husband for many thousands of dollars. She testifies that her husband promised to put the property in her name after she remodeled it, but she could never get him to do it; that it was occupied as a homestead at all times after its purchase by them, until the latter part of August, 1918; and that it was never abandoned by her or her husband up to the time they were granted a divorce. They had one child, George, who lives with his mother, and is about fifteen years of age. The Campbells lived in the

property in question as their homestead until about August, 1918, when they moved, defendant claims temporarily, to Ft. Dodge, without any intention of abandoning the Lehigh homestead, and with the intention to return to it. The husband appears to have been averse to moving to Ft. Dodge. Defendant testifies that he thought she was very foolish, and he became indignant; "and I thought, while things were quiet, and there was nothing moving, it would be just as well for us to move up here, and have the boy in school here."

After the acquisition of the homestead, and on December 26, 1918, a Ft. Dodge bank obtained a judgment against James Campbell in the sum of $5,084, which judgment was assigned to the plaintiff, July 1, 1921. On the same date, the plaintiff obtained a judgment against James Campbell for $3,500, both in the Webster district court. It should be observed and kept in mind that there was no judgment against this defendant, the wife. About the time, or soon after, they moved to Ft. Dodge, their marital troubles began. She says they had been living in Ft. Dodge about a year and a half when the troubles reached a climax. On March 11, 1920, she filed suit for divorce. In May, 1920, defendant contracted for the purchase of a house and lot in Ft. Dodge, and received a deed for it in May, 1921. The divorce case was tried and decree entered March 18, 1921. Plaintiff was awarded what the court, in that decree, called "the homestead property," located at Lehigh, Iowa. The case was appealed to this court, and affirmed in November, 1922 (194 Iowa 828, where some of the facts in regard to the property are stated).

Soon after the decree of divorce,—to be exact, in June, 1921,—appellant levied upon the Lehigh property on the judgments he had formerly obtained against James Campbell. The levy was released upon notice to the sheriff by appellee. Thereafter, and on June 23, 1921, plaintiff brought this action.

Though, as said, the evidence is largely that of the appellee, the abstract and amendment contain 160 pages. A brief summary of the testimony will be stated. True, there was no particular significance to the question of homestead in the divorce case, yet there was some testimony therein bearing on that subject. There was evidence as to its purchase and occupancy, its

value, and that, when they moved therefrom to Ft. Dodge, part of the household goods were left in the Lehigh property, where they remained up to the time of the trial of this case. The removal to Ft. Dodge was during the war, and it appears that business had slowed down in the town of Lehigh. The brick and tile plant at Lehigh, owned by the husband, James Campbell, closed down in 1918. Appellee testifies that, when she and her husband moved to Ft. Dodge, one of the reasons was to put the son in school there. On moving to Ft. Dodge, they rented a property until about May, 1920. It was difficult to rent property in Ft. Dodge, and so appellee purchased a place, on which she expended about $500, to make the place more comfortable to live in. She says she paid a little down, to hold it. She testifies:

"Q. What intention did you have when you bought that property? A. A place to live. At that time there was nothing to rent, and I had to have a place to live, and I couldn't find anything, and I didn't just want to go back to Lehigh just then. So I thought I could buy something to live in. When we left Lehigh, we intended to go back there to live when the plant started. The plant was silent then, or idle, and we moved to Ft. Dodge, but we expected to go back to Lehigh. When we left Lehigh, it was war times, and we expected to start up the plant again. It was dull, and nothing doing down there, and we just moved here to put the boy in school."

She testifies that she told others that their home was in Lehigh and "we wanted to move back there." The husband and wife were and had been having marital troubles, and their plans were quite unsettled. The outcome of the divorce proceeding was uncertain until after the trial. The effect of her testimony is that there was no intention on her part or that of her husband to regard Ft. Dodge as their permanent residence, or to abandon the Lehigh property as a homestead. We think the evidence shows that, at the time they removed from the Lehigh property, there was then the intention to return, though no definite time was fixed when that should be done. She testifies further:

"Q. Is it correct to say that, for a period before the divorce suit was instituted, that you and Mr. Campbell had main-

tained a home and had your home here in Ft. Dodge? A. We just moved here, just for a temporary home. He moved there with me, and lived there when he wasn't out of town. That was about three or two and one-half years. He left the state about two years ago. I bought the Ft. Dodge property for a place to stay. Our case was coming on; the case was pending when I bought that, myself. Mr. Campbell wasn't even here, I think. I paid $500 down, and have been paying as I could. There was no time fixed in the contract for me to complete the payment of the purchase price. Have paid a thousand dollars since; that made $1,500; and am to pay $500 next July. Q. You surely did not buy that property with the intent of living in it, did you? A. Not if I wanted to go back. I could sell it if I saw fit, if I wanted to go back to Lehigh. I am living in it now. Q. Did you buy it with that intention? A. It was the intention— I didn't know how long I would live there. I intended to live there, I suppose, or I wouldn't have bought it. Q. How long did you intend to live there when you bought it? A. I didn't know how long I would. I didn't know what would happen. I bought it in my own name.''

Appellee paid out large amounts out of her property on debts and claims against her husband. Appellee had a substantial right or interest in the Lehigh property by the payment of $3,500 for improving it, and it is undisputed that her husband promised to vest her with the title to it. There may be other circumstances, but we shall not go into further detail.

On the other hand, appellee's petition for divorce, verified by her, recites that both parties to the action are residents of Wahkonsa Township, Webster County, Iowa, and have been such residents in good faith for a period of two years; that, prior to said time, they resided at Lehigh, Webster County. It is thought by appellant that there are some contradictions and inconsistent statements in the testimony of appellee, and between her testimony given on this trial and that given in the divorce case. It may be so. There was a searching examination, in the nature of cross-examination, wherein leading questions were put. The alleged contradictions have been substantially set out in the foregoing report of the evidence. The circumstances most strongly relied upon by appellant are that the

petition in the divorce case recited that the parties were residents of the township in which Ft. Dodge was located; that they could not have two homesteads; and that in her testimony plaintiff referred to the Ft. Dodge place as the place where she lived,—her home,—temporary home. These, with absence from the Lehigh homestead and occupancy of the Ft. Dodge place, standing alone, would doubtless make a prima-facie case, or raise a presumption, as some of the cases put it, which may be rebutted. They are not conclusive. The parties were legal residents of the county. Code Section 3171 provides that the district court in the *county* where either party resides has jurisdiction. Section 3172, Code, 1897, requires that the petition shall state residence in the state for a year, specifying the township and county, except where the defendant is a resident of this state, served personally. Both parties were residents of this state and the same county in which Lehigh and Ft. Dodge are situated. The husband appeared and answered in the divorce case. It was held in *Richardson v. King,* 157 Iowa 287, 295, substantially, that, in the absence of any claim of fraud or collusion, failure of the petition to allege the residence of the parties will not render the decree void, it appearing that defendant was in fact a resident of the county, was personally served, and appeared. In *Gelwicks v. Gelwicks,* 160 Iowa 675, we held that residence of one of the parties to an action for divorce in the county in which the action is brought, is a jurisdictional fact, which must be alleged in the petition; but that failure to state the township of the county in which plaintiff resides is a mere defect or irregularity, not going to the jurisdiction. This may be beside the issue a little. All that is meant is that, conceding that residence and allegations thereof in the petition are necessary in some cases, still, conceding that legal residence is contemplated, the allegation in the petition is certainly no stronger against appellee than voting a number of times in another county where legal residence is required. See *Rand Lbr. Co. v. Atkins,* 116 Iowa 242. Sometimes allegations of this character in a petition are not given their full significance by the average layman. As said, the parties were actual legal residents of the state and county, and they were living in Ft. Dodge, although the husband left Ft. Dodge at about the time or soon after the

divorce was granted, and had been away from home and out of the state a part of the time prior thereto.

Much is made of the circumstance that a place to live in was purchased in Ft. Dodge. For the purposes of the case, it may be conceded, as contended by appellant, that there may not be two homesteads. Considering the reasons for moving to Ft. Dodge, before referred to, the renting and then purchasing and occupancy of the place in Ft. Dodge are not conclusive.

On the whole, we think there was no damaging or material contradiction. With the ordinary witness, the testimony given on the trial is the testimony of the witness, and evidence given on a former hearing is in the nature of impeaching. *State v. Carpenter*, 124 Iowa 5. Appellee being a party, her testimony on the first hearing may be considered as admissions. Though we have not attempted to state every circumstance, we have read the entire record carefully.

1. Appellant's proposition is that the removal in 1918 from the Lehigh property was an abandonment; and that the burden was on appellee to prove fixed, definite, and continued purpose to return, to sustain exemption; and that the evidence wholly fails to sustain this burden. The cases cited sustain the contention where there has been an abandonment, or intention to abandon, at the time of removal. The removal from the Lehigh property did not necessarily constitute an abandonment. The first case cited by appellant is to the effect that the removal constituted an abandonment *unless* it was designed to be temporary. *Kimball v. Wilson*, 59 Iowa 638, 639. The intention is a large factor also, as we shall see later. In *Rand Lbr. Co. v. Atkins*, 116 Iowa 242, 244, we said:

"Moreover, the evidence shows that, at the time they left Oskaloosa, it was with the express intention of returning, and not with the thought of permanently abandoning the premises. True, no time for return was fixed; * * * If the intention was to return if they could at some time in the remote future obtain employment for the husband in Oskaloosa, and this intent was conditional on securing the work, doubtless the abandonment would be complete, under the doctrine announced in *Conway v. Nichols*, 106 Iowa 359, and other like cases. But if the abandonment was temporary, and with the specific intent to return at

some future time, the length of the period being dependent on future conditions, then there was no abandonment. *Robinson v. Charleton,* 104 Iowa 296; *Bradshaw v. Hurst,* 57 Iowa 745; *Reppenn v. Davis,* 72 Iowa 548; *Painter v. Steffen,* 87 Iowa 171. The distinction lies in this: that in the one case there is an intention to return, provided certain conditions exist, while in the other there is fixed and definite intent to return from the beginning, the period of absence alone being conditional. This distinction is, perhaps a little refined, but it has been recognized in our former holdings.''

We may remark, in passing, that we think the facts in the *Atkins* case tend more strongly to show an abandonment than the facts in the instant case. In that case the issue of abandonment was the only one in the case. The parties moved from Oskaloosa to Burlington, and were absent from the Oskaloosa homestead for a longer period than in the instant case,—three years. See 29 Corpus Juris 939. In the *Atkins* case, plaintiff relied on the actual removal from the property; the husband voted three times in the city of Burlington, once, at least, swearing in his vote; declarations were shown to the effect that he was going to remove to Burlington and live there, and that he was required to reside there in order that he might secure work. It was held that this made out a prima-facie case, or raised a rebuttable presumption, as some of the cases put it. But it was shown that Atkins voted under a misapprehension as to the law; that he never intended to abandon his homestead in Oskaloosa; that the Atkinses retained a room in the Oskaloosa property, and left several articles of furniture there. It was held that there was no abandonment. We have held that, where there is an abandonment which is only temporary, and with the continuing intention of returning, a homestead, when acquired, will be presumed to continue until the contrary appears; the burden in this respect being on the general creditor. *Boot v. Brewster,* 75 Iowa 631, 633, citing *First Nat. Bank v. Baker,* 57 Iowa 197; *Bradshaw v. Hurst,* 57 Iowa 745. This court said, in the *Boot* case, that the length of time that the plaintiff has been absent from the homestead is entitled to consideration, but is not conclusive. In that case it was held that the homestead had been left for a temporary purpose, as was indicated by the

fact that furniture was left in the house, which had never been removed. In this connection we may refer to *Boyer v. Dague,* 154 Iowa 67, where the *Boot, Bradshaw, Atkins,* and other cases are cited. In the *Boyer* case, there was an absence of four years; a stove and some other articles were left in the house; the premises were rented for a time; the plaintiff and his wife testified that they had intended to return to their former home, but remained at another place to enable their oldest daughter to complete her high-school course. Held that there was no abandonment. The *Boyer* case appears again in the reports, from a decree dismissing an application for a modification of the former decree. *Boyer v. Dague,* 167 Iowa 212. The former decree was adhered to, and it was said that long continued absence from a homestead may raise a presumption of abandonment, but that such presumption is not conclusive. The presumption in that case was overcome by the evidence. The opinion cites the *Atkins* case to the proposition that, if the intent is fixed and specific to return at some future time, the length being dependent upon future conditions, such would not be an abandonment. In *Vittengl v. Vittengl,* 156 Iowa 41, a case cited by appellant, it was held that, where actual occupancy of a homestead had ceased by the wife before entry of judgment against her husband, the burden was upon her to show a definite and fixed purpose to return, in order to preserve and maintain her homestead rights, and avoid the effect of the judgment. This is doubtless the rule applicable to the instant case; and it was held in the *Boot* case, supra, at page 633, that proof of an intent to abandon the homestead should be clearer and more satisfactory when the judgment was obtained during the time when the premises were occupied as a homestead than where the lien relied upon was obtained after the homestead had ceased to be actually occupied as such.

From the evidence before set out, we are of opinion that the appellee has met any burden resting upon her, and that she has overcome any presumption which may obtain against her.

Other cases cited by appellant are *Wapello County v. Brady,* 118 Iowa 482, 487; *Maguire v. Hanson,* 105 Iowa 215, 219; *Stotts v. Stotts,* 198 Mich. 605 (165 N. W. 761); and the *Conway* case, supra. The facts in all the cases are different, and each

case must depend upon its own facts. No cases are cited by appellee.

Abandonment is largely a matter of intent, to be determined on the particular facts in each case (29 Corpus Juris 935 and 942; *Wapello County v. Brady,* supra); although mere intent to occupy premises as a home at some future time will not impress the property with a homestead character (*White v. Danforth,* 122 Iowa 403). Loss of homestead exemption is not favored. 29 Corpus Juris 931. In the *Atkins* case, supra, at page 245, we said:

"Our former holdings have strongly leaned, as they should, to the protection of the homestead estate."

In order to constitute an abandonment of the homestead, the removal must be voluntary, and not under compulsion of any kind. An abandonment is not occasioned by a removal or temporary absence caused by some casualty or necessity, if there is an intention of returning as soon as circumstances will permit. A casualty or necessity within the rule may consist of the disturbed conditions of the country (29 Corpus Juris 939, 940), or removal for the purpose of obtaining better educational facilities for his children, if the removal is not intended to be permanent, even though later he sells the homestead, and never returns (29 Corpus Juris 941).

The intelligence, appearance, and demeanor of a witness are often very important. Juries are nearly always so instructed. In the instant case, the trial court had an opportunity to observe appellee. A determination of the case depends largely on her testimony. Under such circumstances, we should, as we usually do, give some weight to the finding of the trial court.

2. In appellant's statement as to how the issues were decided, and briefly in the grounds relied upon for reversal, appellant refers to the failure of the court to grant his petition and motion for new trial. The matter is not further referred to or argued, and no cases are cited. Evidently little reliance is placed on this matter. The petition and motion as set up allege newly discovered evidence. They were filed more than three days after the judgment, and three or four weeks thereafter, but at the same term. It was alleged therein that, subsequent to the trial, plain-

2. NEW TRIAL: grounds: newly discovered cumulative testimony.

tiff for the first time discovered that property in Ft. Dodge (not the residence property occupied by appellee) was, on April 26, 1921, contracted to be sold to defendant by another, in exchange for the property in controversy. The prayer is to reopen the case, to offer said testimony. A demurrer was interposed and sustained. It will be observed that the contract alleged to have been entered into was a month or such a matter after the divorce decree in March, 1921, and after the property had been set off to appellee. It is contended by appellee that the alleged newly discovered evidence would constitute no basis for determining the question of whether or not the homestead had been abandoned before the Lehigh property became the property of appellee under the divorce decree. An offer to sell homestead property is not necessarily inconsistent with an intention to return and reoccupy the property as a home if not sold. 29 Corpus Juris 944. See, also, *Vittengl v. Vittengl*, supra, at page 45, and the *Boot* case, supra, at page 632, where we said:

"It clearly appears that he left his homestead for business purposes * * *. Such homestead has been rented and occupied by others. * * * At least one person made application to the plaintiff to purchase the property, and the plaintiff named a price he would take for it. The plaintiff testified that he left the homestead for a temporary purpose, and always intended to return."

Had appellee offered to sell the property before it was set off to her, it may be it would have had a bearing on the question of intent to abandon. 29 Corpus Juris 944, note 36. Possibly it would be so under the circumstances here shown; but in any event, the circumstance is not of sufficient importance to change the result.

On the whole record, we are of opinion that the trial court reached the right solution, and the judgment is—*Affirmed*.

ARTHUR, C. J., EVANS and DE GRAFF, JJ., concur.