FLOYD COUNTY, IOWA, Appellant, v. ERNESTINA WOLFE, Insane, and ROBERT EGGERT, her guardian, Appellees.

Homestead exemption: RIGHTS OF WIFE DIVORCED ON GROUND OF INSANITY. The homestead exemption is purely of statutory origin and can be enjoyed only by those persons or classes designated by the legislature; and a·woman confined in an asylum for the insane, and without issue or others depending upon her, whose marriage has been annulled on the ground of her insanity at the time of her marriage, has no homestead interest in the property of her divorced husband which is exempt from execution on that ground; since by reason of her insanity there could be no valid contract of marriage which would confer upon her any marital rights or duties.

*Appeal from Floyd District Court.*—HON. C. H. KELLY, Judge.

TUESDAY, JULY 7, 1908.

ACTION to recover on account of moneys expended for the support of the insane ward in the State hospital. Judgment for defendants, and plaintiff appeals.— *Reversed* and *remanded.*

*L. O. Rue,* County Attorney, for appellant.

*Eggert & Lockwood,* for appellees.

WEAVER, J.— In the year 1893 the defendant Ernestina Wolfe, was married to one Louis Wolfe. In 1895 they became possessed of a house and lot in Charles City, Iowa, which they occupied as a home until the year 1900, when the said Ernestina was adjudged insane, and committed to the State hospital provided for such unfortunates.. Since that time the plaintiff Floyd County has expended for her sup-

port in said institution the sum of $733.50, no part of which has been repaid. In the year 1905 Louis Wolfe brought suit in the district court of Floyd county to annul said marriage, on the ground that the defendant was at the date thereof insane and incapable of contracting a valid marriage. Upon due notice of the proceeding and trial to the court, a decree was entered granting the relief prayed, and providing for a division of the homestead property, one-third to the defendant Ernestina Wolfe and two-thirds to the said Louis Wolfe. Since that time the property has been sold in partition proceedings, and the proceeds of the one-third interest therein of Ernestina Wolfe, something less than $300, is in the hands of the defendant Eggert, her guardian. In the case at bar the county presents a claim for the moneys expended for the support of the ward, and asks that the fund in the hands of the guardian be applied to its payment. There are no children of said marriage, and the ward is still in the hospital. In the agreed state of facts to the above effect, it is also conceded that said ward is not the head of a family, has no family dependent on her, and is not married. The money thus obtained by the guardian constitutes all the property of the ward, and the guardian offers to " turn it over to the county in part payment of its claim, provided the superintendent of the hospital where the ward is confined will furnish a certificate that she is and will remain incurably insane." On this showing the trial court held with the contention of the guardian that the moneys sought to be reached were exempt to the ward as the proceeds of the sale of a homestead, and denied the prayer of the petition. without prejudice to the renewal of the application, " in the event that for any reason the funds cease to be exempt." The one question presented by the appeal is whether under the agreed facts the ward's share in the moneys arising from the sale of the property occupied by her and the said Louis Wolfe as a home previous to the annulment of their marriage is exempt from execution.

The claim of exemption is based upon the theory that for the purposes of the homestead statute the ward, after the annulment of the marriage, is entitled to the homestead rights of a divorced wife.    The statute as to the homestead rights of a divorced person reads as follows:    "Section 2973.    Family Defined.    A widow or widower, though without children, shall be deemed a family within the meaning of this chapter, while continuing to occupy the real estate used as a homestead at the death of the husband or wife, and such right shall continue to the party to whom it is adjudged in a decree of divorce, during continued personal occupancy."    It is also further provided that no change of the homestead without the concurrence of the husband or wife shall affect his or her rights therein, and that a new homestead to the extent of the value of the old is exempt in all cases where the old one would have been.    Appellees seek to further support their contention by reference to the statute regulating the annulment of marriages.  Without setting it out in full, it may be said that this statute provides that a marriage may be annulled where either party was insane or idiotic at the time of the marriage (Code, section 3182), and except as otherwise provided the pleadings and practice in such cases shall be the same as in actions for divorce.    Code, section 3183.

Homestead rights are the creatures of legislative enactment, and, while the statute is to be construed with generous liberality to effect its benevolent purposes, the court may not by interpretation or construction unduly extend its scope for the benefit of persons not expressly or by fair implication included in the list of its beneficiaries.    The homestead which the law exempts is "the homestead of every family."    Code, section 2972.    The word "family" in its most usual signification is the group comprising the husband and wife and their dependent children.    In a somewhat more enlarged sense, it consists of a person acting as head or manager with others living with and depending upon him and occupying

the same home. *Parsons v. Livingston,* 11 Iowa, 104; *Arnold v. Waltz,* 53 Iowa, 706; *In re Rafferty* (D. C.) 112 Fed. 512; *Sheehy v. Scott,* 128 Iowa, 551. The definition is still further enlarged by the statute above quoted, and made to include the widow or widower, though without children, while continuing to occupy the real estate used as a homestead at the death of the spouse and the divorced person to whom it is adjudged or given by the terms of the decree of divorce during his or her continued personal occupancy. Code, section 2973. No person can claim the benefit of homestead exemption unless he or she comes within one of the classes above mentioned. The ward in this case is confessedly not the head of a family. It is clearly evident that she is not a widow, and, unless she is to be classed as a wife to whom the homestead has been adjudged in a decree of divorce, she is very clearly not one of those for whom the statute clothes the property with exemption from execution.

Upon this question we are constrained to disagree with the learned trial court. "Marriage is a civil contract requiring the consent of parties capable of entering into other civil contracts." Code, section 3139. Without such consent no marital rights are acquired and no marital duties imposed. If one or both of the parties be insane, and thereby incapable of giving the consent necessary to constitute a contract, there can be no marriage in law or in fact between them, although in the interest of good order the courts will assume jurisdiction to decree the annulment of such union. But such annulment is not necessary to clothe the parties with all the rights of unmarried persons. *Powell v. Powell,* 18 Kan. 371 (26 Am. Rep. 774); *Wagmire v. Jetmore,* 22 Ohio St. 271; *Wightman v. Wightman,* 4 Johns. Ch. (N. Y.) 343; *Dare v. Dare,* 52 N. J. Eq. 195 (27 Atl. 654); *Patterson v. Gaines,* 47 U. S. 553 (12 L. Ed. 553); *Drummond v. Irish,* 52 Iowa, 41. In *Wier v. Still,* 31 Iowa, 107, this court stated the rule as follows: "This contract rests upon the consent of the parties thereto. If one of

them was legally incapable of consenting, it is void, and
may be so declared by a court of chancery." In the case
of *Stewart v. Vandervort,* 34 W. Va. 534 (12 S. E. 736, 12
L. R. A. 50), a claim for alimony was allowed by the trial
court to the defendant in a decree annulling the marriage, al-
though there was no statute authorizing such allowance. In
reversing that order the court says: " It is very clear that
without authority of statute alimony could not be decreed for
it never was a marriage. The woman was never a wife."
In *Powell v. Powell, supra,* the court used this language:
" A marriage of an insane person is absolutely void by reason
of the want of capacity of such party to contract." If, then,
in the case before us there was no valid marriage, ceremonial
or otherwise, between the ward and Louis Wolfe, if she was
not his wife by any contract or bond which the law would
recognize or enforce, and if the decree adjudging the alleged
marriage to have been void is not a decree of divorce within
the meaning of our statute (and we see no way to escape
either conclusion)— then this unfortunate woman is included
in none of the classes named by the homestead statutes as
being entitled to its benefits.

We do not mean to be understood as holding that under
no circumstances can a woman whose marriage has been de-
clared void successfully assert homestead rights. She and
her children, if she has any, may constitute a family within
the meaning of the law, and there may be other circum-
stances not appearing in this case under which she could
justly claim exemption. But, as a single or unmarried per-
son which she has been adjudged to be, without children or
others depending upon her, we are clear that no such exemp-
tion exists in her favor. It is worth while also to notice
that the exemption which the statute provides for the benefit
of a divorced person continues only so long as he or she shall
continue in the personal occupancy of the homestead. This
woman is not and concededly was not in the personal occu-
pancy of this property, nor had she been for several years

at the time of its partition sale.   It is true that, being insane
and incapable of consenting to her own removal to the hos-
pital, she may be considered as having been in constructive
possession of her home until it was sold and disposed of, and
probably, had she left a family there a liberal construction
of the statute would allow us to say she continued in per-
sonal occupancy of it, but no such modifying circumstance
exists, and we are not justified in saying that, although for
years confined in the hospital for the insane, the ward was
at the same time in the actual occupancy of her home in a
distant part of the State.   Still other reasons could be ad-
duced for sustaining the claim of the appellant; but those
already mentioned we regard as sufficient.

The authorities cited by appellee are not inconsistent
with this conclusion.   *Higgins v. Higgins,* 117 Ky. 725 ('78
S. W. 1124), decided by the Kentucky court, is authority
for the proposition that the incarceration of a wife in an in-
sane asylum after her husband's death does not affect her
homestead rights.   In the opinion thus stated we fully con-
cur; but it has no application to the case of a woman who
is neither wife nor widow.   The decision in *Wiser v. Lock-
wood's Estate,* 42 Vt. 720, is cited to the effect that after the
death of the husband insane at the date of marriage, and
where no proceedings have been taken to have such marriage
annulled or declared void, the wife becomes entitled to the
rights of a widow.   With this also we may agree, but the
rule stated is not pertinent to the facts of the case at bar.
Counsel for appellee also cite the case of *Barber v. Barber,*
74 Iowa, 301, as holding that a woman who married an
insane person in ignorance of his insanity is entitled to the
rights of a widow after his death.   The opinion cited does
not so hold.   In that case the marriage was adjudged void
at the suit of the wife on the ground that the husband was
insane when such marriage took place, and she was permitted
to recover from him compensation for her services, and for
the impairment of her health occasioned by the defendant's

treatment of her.   The court nowhere expresses the view that a woman married under such circumstances is entitled to the rights of a widow after the death of the husband, nor was such question presented by the issues there being considered.

It is unnecessary to further pursue the discussion.   As we have already stated, rights of the character here claimed by the appellee are of statutory origin, and can be claimed and enjoyed only by those persons or classes designated by the Legislature in the creation of the right.   The ward in this case belongs to none of the classes thus favored.

It follows from what we have said that the cause must be reversed and remanded for further proceedings not inconsistent with the conclusions herein announced.— *Reversed.*