DES MOINES MARBLE & MANTLE COMPANY, Appellee, v. MARIE LOUISE McCONN et al., Appellees; WALDO EBINGER et al., Appellants.

HAWKEYE LUMBER COMPANY, Appellee, v. MARIE LOUISE McCONN et al., Appellees; WALDO EBINGER et al., Appellants.

No. 39689.

November 21, 1929.

Rehearing Denied April 16, 1930.

*Herminghausen & Herminghausen,* for appellants.

*E. H. Pollard, E. C. Weber, Johnson & Martin,* and *J. W. Napier,* for appellees.

Morling, J.—The appellants vendee and wife present three points for reversal: Error (1) in establishing mechanics' liens as superior to vendor's lien, (2) in failing to establish homestead rights in "the dwelling flat in the building in question," (3) in appointing a receiver of the rents and profits.

The contract of sale by the McConns to Ebinger fixes the purchase price at $25,000, "payable $5,000 cash in hand * * * the balance of said consideration $20,000 as follows, to wit: (the party of the second part contemplating making extensive improvements during the year 1923), $1,000 on March 10, 1924, and $2,500 per annum thereafter on each succeeding March 10, together with interest * * *." Ebinger proceeded to make improvements to the amount of many thousand dollars, which he was unable to pay for; after which a supplemental agreement was made between the vendors and vendee, reciting that the original contract "provides for the time and manner of making payment of the consideration therein specified and interest on sums remaining unpaid; and, whereas, there are certain parties who claim mechanics' liens on said Orpheum Theater, growing

out of the remodeling of the said Orpheum Theater in 1923 by the said Waldo Ebinger. Now, therefore, in order that the said Waldo Ebinger may better adjust and meet the payment of said mechanics' liens and also pay the consideration and interest under said contract, out of funds and income as they become available to the benefit of all concerned, we, the undersigned, hereby agree and consent that the said Waldo Ebinger may pay one hundred and fifty ($150.00) dollars per month in place of making the payments and paying interest as specified in said contract; provided, however, that the said Waldo Ebinger shall make payments of at least one thousand dollars per year towards liquidating any valid mechanics' liens against said Orpheum Theater, and when the same are paid off again begin with his annual payments as provided in the contract, until the entire consideration and interest is fully paid.''

I.  The issue of priority between the vendors' lien on the one hand and the mechanics' liens on the other was made between the vendors and the mechanics' lien holders. Priority was decreed to the holders of the mechanics' liens. The holders of vendors' lien have not appealed. Appellants, as their reason for claiming the right to be heard on the question of priority, argue that, in the adjustment of their alleged homestead rights, they would be entitled to have the vendors, whose lien upon the homestead is admitted, proceed against the non-homestead part of the premises before resorting to the homestead, and are therefore interested in the question whether such resort of the vendors' must be subject to prior liens. If it is not subject to prior liens, the vendors might procure satisfaction from the non-homestead part of the premises, thereby leaving the homestead clear of the vendors' lien, as well as exempt from mechanics' liens.

Inasmuch as we are holding that the appellants have no homestead exemption, they are not concerned in this question of priority. As the vendors have not appealed, the question is not before us.

II.  The property sold is a theater building, which has in the second story an apartment or flat for dwelling purposes. Appellants contend that, at the date of the contract of purchase,

March 10, 1923, before and after, they were in the actual occupancy of the apartment as their home. The court found, however, that any homestead they might have had had been abandoned. Defendants' testimony is to the effect that removal was made necessary by the remodeling for which the mechanics' liens are here claimed; that such removal was intended to be temporary; that they moved temporarily into the flat occupied by the husband's mother, and lived with her; that, in preparation for moving back into the apartment after the improvements were completed, they replaced there some of their furniture; that Creem then wanted to rent the apartment, and so appellants decided to stay for a while with the husband's mother and to rent the flat temporarily to Creem, who moved in in November, 1923; that Creem, complaining about the heat, left, and appellants moved into the apartment with all their furniture about January, 1925; that the furniture has remained there ever since; that defendant wife was assisting her husband in the management of the theater, the work of which, with the taking care of the children, was too much for her; and that her mother, to assist her in taking care of the children, permitted appellants to move into her home with her, where appellants lived from April, 1925, to the time of the trial, in May, 1928. The testimony of the appellants is that they rented the apartment furnished, from month to month, temporarily, intending to retain it as their permanent home, and to move back into it, and that they intended to move back the fall following the trial; that they voted in the ward in which the theater building was located.

Removal from the homestead was prima-facie abandonment. The flat, before the remodeling, was composed of seven rooms, three of which, including toilet, were taken to obtain more space for the opera house. The toilet was changed to the opposite side of the hall. The remodeling was of the entire property, for the purpose mainly of increasing the seating capacity and changing the stage in the opera house. The heating appears to have been installed for the use of the entire building, flat included.

The improvements for which the mechanics' liens are claimed appear to have been completed in the summer or fall of 1923. Appellants' reason for renting the flat to Creem, as

given by the husband, is that Creem stated that "it would be close to his business, and he would like to have the flat; and, as we were receiving rent, we decided to take the proposition, and the flat we were living in at my mother's made it a little better for the children. I had one child at that time." Appellants operated the theater until May, 1924. Another person operated it from May until November, 1924. About January, 1925, appellants leased the theater to a concern which was operating three houses, all of which defendant Waldo seems to have then taken the management of, for the operators. Defendant Waldo testifies that his wife was assisting him in the management of the business; that, when they moved from the flat in April, 1925, it was "on account of the wife's health going down, she being required to assist me in the business, and taking care of the children, too. My wife's mother helps take care of the children now, and has ever since we moved up there to their house." It seems that a second child was born during this interval.

While appellants' testimony of intention to return to the flat and make it their home is admissible, it is not conclusive, and its truthfulness must be tested by its reasonableness and consistency, in the light of the circumstances. The wife testifies, in response to question how it came that appellants made the flat their permanent home: "We expected to make our living from the Orpheum Theater the rest of our lives," and "expected to live there the rest of" their lives. In view of the management by another and lease to others, and of Waldo's employment to manage three theaters for the proprietors, and in view of the nature of the property, and of the presence of little children in the family, for whom a better home was evidently found with the parents, we are not convinced of the truth of appellants' claimed intention.

Light is thrown on the real motive of the appellants by their attitude toward the holders of the mechanics' liens. They contested at least seven of the liens. These contests were for alleged failure to perform contracts, for inferior workmanship, and for additional payments alleged to have been made, which would amount to several thousand dollars. The court allowed two reductions, one of $25 and one of $65. A great part of the testimony in the record is directed to the claims for reductions,

but all such claims are here abandoned. Appellants attempted to make settlement with the mechanics' lien holders at 65 per cent of their claims. One claim was assigned to appellant Nora, and judgment was asked by her, and allowed.

Appellants' claim that the flat was their permanent home and their removal was temporary is not sustained. The court properly found that the homestead was abandoned.

III. Appellants, in the effort to compromise with the lienors, obtained from the vendors the modification of contract above set out. The vendee Waldo Ebinger is undoubtedly insolvent. The evidence fairly shows that the property is inadequate security. It was rented. The purpose of the modification of the contract and the intention of the parties to it were to reduce the amount of the payments to the vendor so that the vendee would have more of the income from the property with which to pay mechanics' liens. It was, we think, without doubt, the purpose, and is the proper interpretation of the modification agreement, that at least $1,000 per year for four years, from the income from the property should be used in paying off mechanics' liens. By the contract and modification, the rents and profits to the extent of at least $1,000 per year for four years were, in effect, pledged for the payment of the mechanics' liens, and correspondingly for the benefit of the vendors. Equity and good faith toward the vendor and the mechanics' lien holders require that the income to that extent should be so used. The vendee, however, has not done this. He has received the income, but expended it largely for other purposes, and has, as he says, only about $200 left. The mechanics' lien holders and vendors joined in a petition for the appointment of a receiver of the rents and profits. By the decree, a receiver for the rents and profits was appointed. He was required to pay the necessary expenses, but to make no disbursement of the net rentals until he should have received $4,000 net, when he was required to report to the court. The decree provided that the defendant vendee might prevent the appointment of receiver by depositing with the clerk $4,000, to be held until further order. The vendee is the equitable owner. The vendors, under the statute, are entitled to the position of mortgagees. Code, 1897, Sections 4297, 4298. The vendee is insolvent, and the security is inadequate.

The receivership, therefore, to the limited extent provided for, was authorized and proper. *Davenport v. Thompson,* 206 Iowa 746.

No objection is raised here that the receiver was appointed by the final decree, instead of awaiting the result of the execution sale.

Appellants move to tax costs of additional abstract to appellees. The motion is denied.—*Affirmed.*

ALBERT, C. J., and EVANS, STEVENS, DE GRAFF, KINDIG, WAGNER, and GRIMM, JJ., concur.