IN RE ESTATE OF MARY C. MCCLAIN; JULIA MAY NEIBERT, Appellant.

No. 43078.

OCTOBER 15, 1935.

Ralph H. Munro, for appellant.

Thoma & Thoma and Simmons & Simmons, for appellee.

POWERS, J.—In the early part of the year 1890, Mary C. McClain and her husband and three minor children lived on a farm of 205 acres in Jefferson county, Iowa. The title to the farm was in Mary C. McClain. On May 3d of that year, her husband was killed accidentally. She continued to reside with

the children on the farm until the fall of that year, when a public sale was held, and the personal property on the farm sold. She purchased, in the fall of 1890, a residence property in Fairfield, known in this record as the Barnes house, for which she paid the sum of $2,000, and at that time moved into this home with her three minor children. She continued to reside in this home until the year 1904, when she purchased a vacant lot in the town of Fairfield for $1,000 and built thereon a home costing $4,200. This property is known in this record as the Gilham house, and is the property over which this controversy was waged. About the same time she sold the 205-acre farm for $8,800 and used from the proceeds of the sale enough to finance the purchase of the lot and the erection of the new home.

When the new home was completed, Mary C. McClain with her minor child, Julia May McClain, aged sixteen, began the occupancy of the same as their home, the two older children having reached maturity and taken up their residences elsewhere. Mary C. McClain and the daughter, Julia May, continued to live in this property until the death of Mary C. McClain. In the meantime, however, in the year 1918, Julia May McClain married one W. H. Neibert, who came to live in the home of his wife's mother, and he and his wife continued to reside with Mary C. McClain in her home until her death, and are still residing there. Was this residence property, thus occupied by them, the homestead of Mary C. McClain at the time of her death as claimed by Julia May Neibert, appellant herein? Upon the answer to that question depends the issue in this case.

██ I. It should be noted at the outset that the controversy here arose in probate; that the appeal is from the order of the court authorizing the executor to sell real estate for the purpose of paying debts over the objection that a part of the property was the homestead of the deceased. Such an application is triable by ordinary proceedings without a jury. The findings of the trial court, therefore, have the force and effect of a verdict of a jury. We are at liberty to disturb them only in the event that they are contrary to law or are not supported by substantial evidence. Murphy v. Callan, 199 Iowa 216, 199 N. W. 981. The evidentiary facts, however, are not in dispute. There is no conflict in the evidence. The questions which arise are, therefore, chiefly questions of law. Unless it can be said that the findings of the trial court as to the facts are not sustained by substantial

evidence or that the conclusions of law are erroneous, there can be no reversal. No other errors are assigned.

II. Appellant contends that Mary C. McClain and her husband had acquired a homestead right in 40 acres of the 205-acre farm which they occupied in 1890; that upon the death of Mr. McClain, her husband, she acquired the right to continuance of that homestead during her lifetime under section 10145 of Code 1931, and that such right was not in any way dependent upon her having children or supporting a family, but that it arose solely from the fact that she was the surviving spouse. With this much of the argument we are disposed to agree. Difficulty arises, however, when an attempt is made to take the next step. Appellant contends that she had the right to exchange this homestead for another homestead, and that when she sold the farm and out of the proceeds acquired the residence property now in controversy, she but used the proceeds of one homestead to acquire another, and that the one she thus acquired was held by her under the provisions of section 10154, Code 1931, the same way as the one which she sold, to the extent that the value of the new does not exceed the value of the old. The difficulty with this argument is that it assumes that she had a homestead in the farm at the time it was sold and it ignores the fact that she had left the farm with her minor children, acquired a home in Fairfield, and lived there for some fourteen years before she sold the farm and invested the proceeds in a new home. Did she continue to hold a homestead right in the farm during the fourteen years that elapsed after she left the farm and moved into Fairfield and purchased and occupied a home there? Removal from the homestead property with no intention to return to it operates as an abandonment of the homestead. Davis v. Kelley, 14 Iowa 523. It seems to be the settled rule that where the homestead property is physically abandoned and a new home purchased and occupied, that such showing constitutes a prima facie case and the burden then of going forward with proof is upon the person claiming that the homestead right was not lost to show that there was an intention to return. Davis v. Kelley, 14 Iowa 523; Des Moines Marble & M. Co. v. McConn, 210 Iowa 266, 227 N. W. 521. There is not a single circumstance in this record to suggest that there was ever a purpose to return to the farm at the time Mrs. McClain and her children moved therefrom. The circumstances tend to establish a contrary intent, and

we are satisfied that Mrs. McClain had, by 1904, lost, by abandonment, any homestead right which she may have had in the farm in 1890, when she moved therefrom. Since she had no homestead interest in the farm, the investment of the proceeds of the farm in another home did not by reason of that fact vest the new home with the characteristics of a homestead. Moreover, there is a total absence of evidence as to what portion of the total sale price of the farm was represented by the value of the claimed homestead therein. The finding of the trial court that there was a failure to show that this property was purchased with the proceeds of a former homestead which Mrs. McClain was entitled to hold alone as surviving spouse is amply sustained by the evidence.

▆▆▆ III. Appellant further argues, however, that at the time Mrs. McClain moved into and commenced to make her home in the property now in controversy, she had with her a minor daughter, appellant herein, who was then sixteen years of age, and who was dependent upon her for support, and that, by reason of that fact, she acquired a homestead interest in this property entirely independent of the source from which the money came for its purchase, and that such homestead right continued until her death. It is well settled in this state that a widow or widower with children may acquire a homestead. Solnar v. Solnar, 205 Iowa 701, 216 N. W. 288. That Mary C. McClain did thus acquire a homestead in this Gilham property when her occupancy thereof began is clear. It does not seem to be disputed by appellee, and it seems to have been recognized by the trial court. But does it avail appellant anything? Or did she have the burden of showing that the circumstances of the parties and their manner of living in the home after her marriage were such as give to this property a homestead character after that time, independent of what it had previously been? This is the vital issue in the case.

The trial court concluded, as a matter of law, that it was immaterial whether or not this property was the homestead of Mrs. McClain prior to her daughter's marriage, and that the burden was upon the daughter, Julia May Neibert, who asserted the homestead character of this property, to prove that it was the homestead of Mrs. McClain at the time of her death, and the court found, on the facts, that the evidence was insufficient to establish that proposition.

The showing is not very clear as to how the daughter and her husband and the mother, Mrs. McClain, managed the household after the daughter's marriage, nor the circumstances under which they lived together in this home. The daughter testified that after her marriage her husband moved in, and that they lived with her mother. The inference pretty clearly is that they lived as one family. The record is also rather obscure as to the circumstances of the daughter and her husband. It does appear that the husband was employed or in business for himself all of the time, but the amount of his income is not disclosed. At the time of the trial he was operating a suburban grocery store and owned some vacant lots in an addition to Fairfield and held some tax certificates. Neither the value of the vacant lots nor the amount or value of the tax certificates is shown. He filed a claim against Mrs. McClain's estate for something over $1,000 for groceries. This claim had not been allowed and was in dispute. The fact, however, that said claim is made, and that there is a controversy over it tends strongly to indicate that these people lived together as one family. It also appears that the daughter, Julia May Neibert, owned the building in which her husband operated a suburban grocery store and a residence property adjacent thereto, subject to a mortgage, the amount of which is not shown, and also held some notes of her mother, Mrs. McClain. But neither the value of these holdings nor the income therefrom is shown.

It may be conceded that this showing was insufficient standing alone and without reference to the fact that Mrs. McClain had previously acquired a homestead in this property to compel a finding that the property was the homestead of Mrs. McClain at the time of her death.

The trial court fell into error, however, in its conclusion, as a matter of law, that the previous homestead character of this property was immaterial and that the burden was upon Mrs. Neibert to prove that this property was the homestead of Mrs. McClain at the time of her death without reference to its previous homestead character. The ordinary presumption of a continuance of a condition once shown to exist would seem to require us to hold that once it is shown that the homestead character attached to a home because of the residence therein of a mother and daughter, that such homestead character is presumed to continue, at least as long as the mother and daughter

continue to reside in that home. Such conclusion would also seem to be demanded by the very spirit and purpose of the homestead exemption statutes (Code 1931, § 10135 et seq.) and the rule repeatedly recognized by this court that such statutes must be liberally construed in favor of the exemption in order to accomplish their economic, sociological, and humanitarian purposes. The purpose is to provide a margin of safety to the family, not alone for the benefit of the family, but for the public welfare and social benefit which accrues to the state by having families secure in their homes. There may be just as much reason, if not more, why the homestead character of this property should be recognized after the daughter married and took her husband into the home as there was before.

■■■ The general rule is that a homestead once acquired is presumed to continue. This court has recognized the difference between the evidence necessary to show the establishment of a homestead and the evidence necessary to show the continuance of one previously established. For example, proof of an intention to occupy property as a home, no matter how definite and conclusive, is insufficient to give that property the homestead character, but once the homestead character has attached, the owner may remove therefrom and the homestead character is preserved as long as he has an intention to return. In other words, intention to occupy in the future, while insufficient to establish a homestead originally, is sufficient to continue a homestead previously established.

The authorities recognize a presumption in favor of the continuance of the homestead. In Bradshaw v. Hurst, 57 Iowa 745, 11 N. W. 672, this court said:

"The burden under the issue was on the plaintiff to show an abandonment of the homestead." In 29 Corpus Juris at page 961, the rule is stated thus:

"All presumptions are in favor of preservation and retention of the homestead. When property has been impressed with the homestead character it will be presumed to continue so until its use as such has been shown to have terminated."

So strong is this presumption that the majority of courts hold that where the homestead character has attached to property it can be lost only by waiver or abandonment by the owner. 29 Corpus Juris, 951. They hold that where the homestead char-

acter has attached by reason of the residence therein of an unmarried owner and members of the owner's family, that it will be held to continue even though the other members of the family leave the home and the owner resides there alone; in other words, that the presumption of continuance in such a case is conclusive and not rebuttable as long as the owner lives in the home. 13 R. C. L. 666 and 667; Notes, 13 L. R. A. 743; 4 L. R. A. (N. S.) 379; 12 Ann. Cas. 717. This court has followed the minority rule in holding that it may be shown that a homestead acquired by an unmarried person has lost its homestead character by proof that the members of the family have left the home and the owner is residing there alone. Fullerton v. Sherrill, 114 Iowa 511, 87 N. W. 419. But by so holding we merely held that the presumption of continuance is not a conclusive one. There still remains a presumption of continuance, though such presumption is rebuttable, and is overcome by evidence that there are no longer any members of the owner's family in the home and the owner is there alone.

In view of this presumption of the continuance of the homestead, can it be said that the evidence here would support a finding that the homestead character of the property had been lost? In the case of Sheehy v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N. S.) 365, we held that a widow with a son forty years of age might acquire a homestead where it appeared that the son, although earning some wages, was improvident and irresponsible and to some extent dependent on his mother. In Tyson v. Reynolds, 52 Iowa 431, 3 N. W. 469, this court held that, under the statute exempting the personal earnings of the head of the family, the father was the head of the family who had living with him in his home his adult son and his son's wife. These cases show that the mere fact that a child reaches its majority or the fact that it marries does not take it outside the family of the parent where it remains in the home. Nothing is added by the showing that the spouse of the married child is employed and had some income, where there is nothing to indicate the amount of such income. Total dependence is not required. Sheehy v. Scott, 128 Iowa 551, 552, 104 N. W. 1139, 4 L. R. A. (N. S.) 365; Fox v. Waterloo National Bank, 126 Iowa 481, 102 N. W. 424. These circumstances are all perfectly consistent with the mother contributing something to the support of her daughter and her daughter's husband and with some mea-

sure of dependency on the part of the daughter and her husband on such support. It is true that a mother sometimes loses a daughter by marriage. It is equally true that she sometimes acquires a son. True, after her marriage, the daughter's husband was under legal obligation to support her, but the natural and moral obligation of the mother remained as strong after the marriage as it was before. The presumption is that the homestead continues. While the daughter remained in the home, she may have remained there as a member of her mother's family. The evidence here falls far short of showing she did not continue to be a member of her mother's family. The presumption is not overcome.

It follows that under the record in this case, this property in controversy was the homestead of Mary C. McClain at the time of her death, and that the conclusions and findings of the trial court are contrary to law and without support in the evidence, and that, on that account, the order herein directing the executor to sell the property in which testator lived at the time of her death to pay debts of her estate, must be, and it is hereby, reversed.—Reversed.

KINTZINGER, C. J., and ALBERT, ANDERSON, DONEGAN, PARSONS, HAMILTON, and MITCHELL, JJ., concur.