**In re Doylene K. ROBERTS, Debtor.**

**Renee K. Hanrahan, in her Sole Capacity as Trustee, Appellant,**

v.

**Doylene K. Roberts, Appellee.**

**No. 11–CV–15–LRR.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

May 5, 2011.

Steven G. Klesner, Iowa City, IA, for Debtor.

Renee K. Hanrahan, Cedar Rapids, IA, Trustee.

## ORDER

LINDA R. READE, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

II. *STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 162

| | | |
|---|---|---|
| III. | FACTUAL AND PROCEDURAL BACKGROUND | 162 |
| | A. Newport Beach Property | 162 |
| | B. Bankruptcy Court Proceedings | 163 |
| | C. Bankruptcy Court Ruling | 163 |
| | D. The Appeal | 164 |
| IV. | LEGAL BACKGROUND | 164 |
| V. | ANALYSIS | 165 |
| | A. Extraterritorial Effect | 165 |
| | B. Abandonment | 169 |
| | 1. Abandonment under Iowa law | 169 |
| | 2. Bankruptcy Court's reasoning | 170 |
| | 3. Parties' arguments | 170 |
| | 4. Application | 171 |
| | a. Conditional intent to return | 171 |
| | b. Willingness to sell the homestead | 171 |
| VI. | CONCLUSION | 173 |

## I. INTRODUCTION

This is an appeal from the United States Bankruptcy Court for the Northern District of Iowa ("Bankruptcy Court"). *See In re Roberts,* Bankr.No. 09–00583. The Bankruptcy Court ruled that Debtor Doylene K. Roberts properly claimed a homestead exemption for real property in California. Trustee Renee K. Hanrahan appeals.

## II. STANDARD OF REVIEW

■ A district court has jurisdiction to hear appeals from final judgments, orders and decrees of bankruptcy judges. 28 U.S.C. § 158(a). On appeal from a bankruptcy court, the district court acts as an appellate court and reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *In re Cedar Shore Resort, Inc.,* 235 F.3d 375, 379 (8th Cir.2000).

## III. FACTUAL AND PROCEDURAL BACKGROUND

### A. Newport Beach Property

In 1982, Debtor married Thomas Hogan. In 1987, the couple bought a home in Newport Beach, California ("Newport Beach Property"). From 1987 to 1991, they lived between the East and West Coasts, and treated the Newport Beach Property as an investment property. In 1991, Debtor moved into the Newport Beach Property as her primary residence. Hogan was living in Virginia, and did so continuously until 2000, when Debtor paid for him to return to California.

After Hogan's return, Debtor and her mother bought another property in Alta Loma, California. For the next few years, Debtor split her time between the Newport Beach Property and the Alta Loma residence. After her mother's death, Debtor sold the Alta Loma residence. Debtor and her sister then acquired another property in Devore, California. Debtor again split her time between the Newport Beach Property, where Hogan was living full-time, and the Devore property.

In April of 2004, Debtor attended a meeting with Hogan and his therapist. Hogan's therapist told Debtor that Hogan had moved forward with his life and that Debtor should consider doing the same. After the meeting, Debtor contacted an attorney and completed preliminary separation documents.

In July of 2004, Debtor and Hogan met for dinner. Over the meal, Hogan told Debtor that he had fathered a child with another woman. Hogan also disclosed that he had pled guilty to bank fraud and would be starting a period of home confinement at the Newport Beach Property.

In the next few days, Debtor went to the Newport Beach Property to retrieve her belongings. When she arrived, Debtor encountered a very upset Hogan, who accused Debtor of hitting him. Debtor called her attorney, who told Debtor to get out of the house and not go back. Debtor left the residence and has not been back since. Shortly thereafter, Debtor and Hogan entered into a stipulated restraining order in which they agreed to stay away from one another. They also agreed that Hogan would have temporary exclusive use and control of the Newport Beach Property, while Debtor would have temporary exclusive use and control of the Devore property.

In August of 2004, Debtor moved into the Devore property as her primary residence. In 2006, Debtor sold the Devore property. After paying the mortgage, there were no remaining proceeds. In 2006, Debtor moved to West Branch, Iowa, where she currently lives in a rental property.

The Newport Beach Property remains the subject of dissolution proceedings in California. Hogan continues to reside in the home.

### B. Bankruptcy Court Proceedings

In her bankruptcy petition, Debtor did not list the Newport Beach Property as her homestead and claimed no homestead exemption. Debtor explained that it was her intent at that time to sell the Newport Beach Property, which she believed would allow her to pay her creditors in full. Debtor and her counsel believe additional proceeds would remain after paying her creditors.

The Trustee eventually negotiated an agreement to sell Hogan the Newport Beach Property for approximately $400,000. Debtor objected to the proposed sale as substantially undervalued. According to Debtor, two previous appraisals valued the Newport Beach Property at approximately $1.2 to $1.6 million. Debtor then amended her bankruptcy papers to list the Newport Beach Property as exempt.

The Trustee objected to the exemption claim, arguing that Debtor abandoned the Newport Beach Property as her homestead under Iowa law. On August 25, 2010, the Bankruptcy court held a hearing ("Hearing") on the exemption claim and objection.

At the Hearing, Debtor testified that she would love to live in the Newport Beach Property again. Although Debtor conceded that several practical reasons, including financial ones, precluded her doing so, Debtor testified that living there "would be the greatest thing in the world." Hearing Transcript ("Tr.") (docket no. 1–7) at 28.

At the Hearing, the testimony and parties' arguments focused on whether Debtor had abandoned the Newport Beach Property as her homestead. At the end of the parties' post-hearing arguments, however, the Trustee noted that she had been researching the issue of whether Debtor could claim California property as exempt under the Iowa homestead exemption. The Bankruptcy Court ordered simultaneous briefing on this question.

### C. Bankruptcy Court Ruling

On December 29, 2010, the Bankruptcy Court entered a "Ruling on Trustee's Objections to Debtor's Claim of Homestead Exemption" ("Ruling") (docket no. 1–1).

*See generally In re Roberts*, 443 B.R. 531 (Bankr.N.D.Iowa 2010). The Bankruptcy Court concluded that "the Trustee did not did not timely or appropriately raise the issue of the extraterritorial effect of Iowa law on Debtor's claim of exemption." Ruling at 8. The Bankruptcy court also concluded that even if the Trustee had properly raised the argument, "the current version of the Iowa homestead exemption allows for extraterritorial effect." *Id.* at 9. The Bankruptcy Court held that Debtor did not abandon the Newport Beach Property as a homestead. Accordingly, the Bankruptcy Court overruled the Trustee's objection.

### D. The Appeal

On January 11, 2011, the Trustee filed a Notice of Appeal (docket no. 1–2) with the Bankruptcy Court. Pursuant to 28 U.S.C. § 158(c)(1)(A), the Trustee elected to have this court hear the appeal.

On February 23, 2011, the Trustee filed a Brief ("Trustee's Br.") (docket no. 4). On March 10, 2011, Debtor filed a Brief ("Debtor's Br.") (docket no. 5). On March 15, 2011, the Trustee filed a Reply Brief ("Reply Br.") (docket no. 6). The matter is fully submitted and ready for decision.

### IV. LEGAL BACKGROUND

A bankruptcy debtor may choose between the federal exemptions provided in 11 U.S.C. § 522(d) and the exemptions provided under state law. *In re Huebner*, 986 F.2d 1222, 1224 (8th Cir.1993). Specifically, a debtor may claim as exempt

> any property that is exempt under Federal law ... or State or local law that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition. . . .

11 U.S.C. § 522(b)(3)(A). However, states may choose to opt out of the federal ex-emptions, and thereby limit their debtors to state exemptions. *Huebner*, 986 F.2d at 1224. Iowa has done so. *See* Iowa Code § 627.10 (providing that an Iowa bankruptcy debtor "is not entitled to elect to exempt from property of the bankruptcy estate the property that is specified in 11 U.S.C. § 522(d)"). Thus, as the parties agree, Iowa exemption law governs this dispute. As the party objecting to the claimed exemption, the Trustee has the burden of proving that the Newport Beach Property is not exempt. *See* Fed. R. Bankr.P. 4003(c); *In re Stenzel*, 301 F.3d 945, 947 (8th Cir.2002).

In Iowa, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. "The homestead must embrace the house used as a home by the owner" and "may contain one or more contiguous lots or tracts of land, with the building and other appurtenances thereon, habitually and in good faith used as part of the same homestead." Iowa Code § 561.1.

The purpose of the homestead law is "to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune." *In re Estate of Tolson*, 690 N.W.2d 680, 682 (Iowa 2005). The homestead exemption must be construed broadly and liberally. *See id.; see also Charter v. Thomas*, 228 Iowa 554, 292 N.W. 842, 843 (Iowa 1940) ("Our holdings involving homesteads have strongly leaned, as they should, to the protection of the homestead estate."). However, because the homestead exemption is a creature of statute, "the court may not by interpretation or construction unduly extend its scope. . . ." *Floyd Cnty.*

*v. Wolfe,* 138 Iowa 749, 117 N.W. 32, 33 (Iowa 1908).

## V. ANALYSIS

The Trustee identifies two issues on appeal. First, whether the Bankruptcy Court erred in concluding that the Iowa homestead exemption applies extraterritorially to property in California. Second, whether the Bankruptcy Court erred in holding that Debtor did not abandon her homestead.

### A. Extraterritorial Effect [1]

██ The Trustee argues that *Rogers v. Raisor,* 60 Iowa 355, 14 N.W. 317 (Iowa 1882), is controlling on the issue of extraterritorial effect. In *Rogers,* the debtor borrowed $100 from a railway. *Rogers,* 14 N.W. at 317. He then sold his Iowa homestead and used the proceeds to purchase a new homestead in Missouri. *Id.* The debtor later sold the Missouri property and purchased a new homestead in Iowa. *Id.* Finally, the debtor sold the second Iowa property and bought a third homestead in Iowa. *Id.* When the railway levied upon the third Iowa property, the debtor argued it was entitled to the homestead exemption. *Id.* The Iowa Supreme Court rejected the claimed exemption, reasoning that the proceeds from the sale of the first Iowa homestead ceased to be exempt "as soon as it was invested in real estate in the state of Missouri." *Id.* at 318. The Iowa Supreme Court declared:

> The laws of each state . . . apply only to homesteads acquired and held under its own laws, and within its territorial jurisdiction. The laws of neither state can

have any extraterritorial force or application.

*Id.*

The Bankruptcy Court declined to follow *Rogers,* reasoning that an Eighth Circuit Court of Appeals decision "significantly altered the analysis of the reach of state homestead exemptions in the context of Federal Bankruptcy law." Ruling at 9. That decision is *In re Drenttel,* 403 F.3d 611 (8th Cir.2005). In *Drenttel,* the debtors sold their home in Minnesota and moved to Arizona, where they purchased a new residence. *Drenttel,* 403 F.3d at 612. A month later, they filed for bankruptcy in the District of Minnesota and claimed their Arizona property was exempt under Minnesota's homestead exemption. *Id.* The trustee objected, claiming the statutory exemption did not apply to property outside of Minnesota. *Id.* at 612–13.

The Eighth Circuit Court of Appeals rejected the trustee's argument and held that the Minnesota exemption applied to the Arizona homestead. *Id.* at 615. In doing so, the *Drenttel* court acknowledged the trustee's argument that "states traditionally do not give extraterritorial effect to statutes relating to the ownership of real property." *Id.* at 613. However, it observed,

> This rule is based on state interpretation of *state* law and may not apply with equal force in the context of a federal statute. Traditional concerns respecting the dignity and sovereignty of other states and limiting jurisdiction to the state borders are simply inconsistent with the national effect and supremacy of federal law.

*Id.* at n. 1. Despite the trustee's argument that the bankruptcy court should

---

1. The court need not address the Bankruptcy Court's conclusion that the Trustee failed to properly raise this argument. Even assuming the Trustee properly raised the issue, the court agrees with the Bankruptcy Court that Debtor may apply the Iowa homestead exemption to property in California.

apply Minnesota choice-of-law principles, the Eighth Circuit Court of Appeals noted that Congress's "[r]eferences to state exemption statutes do not invoke the entire law of the state. Instead, Congress used state-defined exemptions as part of a federal bankruptcy scheme, while limiting the application of state policies that impair those exemptions." *Id.* at 614.

The Eighth Circuit Court of Appeals recognized that the Minnesota statute itself did not preclude exemption for out-of-state property. *Id.* at 615. The *Drenttel* court also noted that allowing extraterritorial use of the exemption was consistent with Minnesota's rules of liberal construction of the exemption and the policies underlying it. *Id.* ("These policies are furthered by providing debtors a secure home protected from creditors; the location of the home is not relevant."). Accordingly, the Minnesota homestead exemption could be applied to the debtors' Arizona property. *Id.* at 615.

In addition to *Drenttel,* the Bankruptcy Court relied on *In re Williams,* 369 B.R. 470 (Bankr.W.D.Ark.2007) and *Stephens v. Holbrook,* 402 B.R. 1 (10th Cir. BAP 2009). In *Williams,* the debtors lived in Iowa for more than five years before moving to Arkansas. *Williams,* 369 B.R. at 472. After filing for bankruptcy in Arkansas, the debtors claimed their Arkansas residence was exempt under Iowa's homestead exemption. *Id.* The trustee objected, claiming that "the Iowa homestead exemption is not extraterritorial and cannot be applied to property located outside the state of Iowa." *Id.* The bankruptcy court rejected the trustee's argument, holding that the debtors could apply the Iowa homestead exemption to their Arkansas property. *Id.*

at 476. The court acknowledged the Iowa Supreme Court's decision in *Rogers,* on which the trustee relied, but concluded that "this argument fails in the light of [*Drenttel* ]." *Williams,* 369 B.R. at 475. The bankruptcy court explained,

> Because the homestead exemption statute is not territorial on its face, and permitting the exemption is consistent with Iowa's liberal construction of its homestead laws, the Court finds that Iowa's homestead exemption is available to the debtors in this case as a matter of federal bankruptcy law and overrules the trustee's objection.

*Williams,* 369 B.R. at 476.

Similarly, in *Stephens,* the debtor lived in Iowa for several years. *Stephens,* 402 B.R. at 2. She eventually sold her home and, after moving to Oklahoma, deposited the proceeds in a bank account in that state. *Id.* The debtor filed for bankruptcy in Oklahoma and claimed the sale proceeds as exempt.[2] *Id.* The trustee objected, requiring the Tenth Circuit Bankruptcy Appellate Panel ("BAP") to consider whether "Iowa's [homestead] exemption laws have 'extraterritorial effect[.]' " *Id.* at 5.

The BAP distinguished prior Iowa Supreme Court decisions, including *Rogers,* by noting that they were decided based upon a different version of Iowa's homestead law. *Id.* at 7. The BAP concluded that current Iowa law does "not plainly limit its homestead exemption either to residents of, or real property located within, the State of Iowa." *Id.* at 8. Given the statute's silence, and the liberal construction afforded to Iowa's exemption laws, the BAP held that "Iowa's homestead exemption can be applied to real property (or

---

2. Iowa's homestead exemption extends to new homesteads bought with the proceeds of a sale of an exempt homestead. *See* Iowa Code § 561.20. Further, if a debtor intends to

reinvest the proceeds in a new homestead, the proceeds remain exempt "for a reasonable time." *See Millsap v. Faulkes,* 236 Iowa 848, 20 N.W.2d 40, 41 (Iowa 1945).

here, proceeds) located outside the state." *Id.*

In this case, the Bankruptcy Court relied on the reasoning of *Williams, Stephens* and particularly *Drenttel,* and concluded:

> The decision in *Rogers v. Raisor* and other Iowa cases following it, were based on traditional considerations of comity and limiting of one state's jurisdiction at its borders. Under *Drenttel,* those considerations are not applicable to this federal bankruptcy decision. The *Rogers* case is further distinguishable given the changes in statutory language and the legislative intent demonstrated since *Rogers.*
> Under the analysis of the Iowa homestead statute provided for by *Drenttel* and other recent cases, the Court concludes the Iowa homestead exemption can apply extraterritorially. The plain language of the statute provides no territorial limit. The policies governing interpretation of the statute require that it be given a broad reach to further its protective purposes. Allowing the statute to have extraterritorial reach furthers those purposes. *See Drenttel,* 403 F.3d at 615.

Ruling at 12.

The Trustee argues *"Drenttel, Williams,* and *Stephens* are all readily distinguishable and inapplicable." Trustee's Br. at 8. With respect to *Drenttel,* the Trustee points out that the case involved application of Minnesota's—not Iowa's—homestead exemption. As for *Williams* and *Stephens,* the Trustee argues they are distinguishable from this case because the debtors in those cases "originally had homes in Iowa, and 'carried' their homes from Iowa into Arkansas and Oklahoma respectively." *Id.* at 9. The Trustee raises the same response to *Drenttel,* noting that the debtors "had a home in Minnesota originally, and then 'carried' their Minnesota home to Arizona." *Id.* The instant case, the Trustee contends, is different because the Newport Beach Property "had no root in Iowa." *Id.* Thus, Debtor "is attempting to 'import' a California home into Iowa, whereas the debtors in *Williams* and *Stephens* 'exported' their Iowa homes to Arkansas and Oklahoma respectively, and the debtors in *Drenttel* similarly 'exported' their Minnesota home to Arizona." *Id.*

The Trustee also urges the court not to follow *Williams* and *Stephens,* noting they were decided by inferior courts outside the State of Iowa. The Trustee argues the court similarly is not bound by *Drenttel,* because it did not involve an Iowa statute. *Rogers,* the Trustee insists, is the controlling case that this court "must follow." *Id.* at 10.

The Trustee raises valid distinctions between the cases on which the Bankruptcy Court relied and the instant case. It is true—to a near certainty—that the Newport Beach Property "was never in Iowa." *Id.* at 9. It is also true that unlike *Williams* and *Stephens,* Debtor is not seeking to protect property that somehow can be traced back to Iowa or, in the case of *Drenttel,* Minnesota. Nonetheless, the court agrees with Debtor that "this distinction is meaningless in light of the *Drenttel* decision." Debtor's Br. at 11.

Although *Drenttel* dealt with Minnesota's exemption statute, its reasoning rests on principles applicable to federal bankruptcy law generally. In *Drenttel,* the Eighth Circuit Court of Appeals declined the invitation to apply Minnesota choice-of-law principles to decide whether Minnesota's homestead exemption applied to Arizona property. *Drenttel,* 403 F.3d at 614. The *Drenttel* court acknowledged that states generally do not give extraterritorial effect to statutes relating to real proper-

ty. *Id.* at 613. However, "[t]his rule is based on state interpretation of *state* law and may not apply with equal force in the context of a federal statute." *Id.* at n. 1. The critical passage of *Drenttel* states:

> References to state exemption statutes do not invoke the entire law of the state. Instead, Congress used state-defined exemptions as part of a federal bankruptcy scheme, while limiting the application of state policies that impair those exemptions. The federal bankruptcy statute dictates the applicable exemptions, requiring the debtor to file in the designated district, and stating that the debtor is entitled to federal exemptions or the exemptions provided by the law of the state where the petition is filed. § 522(b)(2)(A). "This is a federal choice of law in which the choice has been made. That choice is the applicable state exemption law, and in this case the exemption law is [Minnesota]'s statutory homestead exemption. Whatever [Minnesota]'s conflicts of law jurisprudence may be is simply irrelevant." *In re Arrol*, 170 F.3d 934, 936 (9th Cir. 1999).[3]

*Id.* at 614 (internal citations omitted).

The considerations that dictated the result in *Drenttel* lead to the same conclusion here. First, the Iowa homestead statute, like Minnesota's, "does not preclude use of the homestead exemption for an out-of-state property." *Id.* at 615; Iowa Code § 561.16 (providing that "[t]he homestead of every person is exempt from judicial sale"). Second, like Minnesota courts, Iowa courts "have historically construed the homestead exemption liberally in favor of the debtor." *Drenttel*, 403 F.3d at 615; *see also Tolson*, 690 N.W.2d at 682. Third, the policies underlying Iowa's homestead exemption are the same as those recognized in *Drenttel*:

> The state's policy of protecting a debtor's homestead rests on the recognition that the state benefits from the sense of security and connection to the community nurtured in the home. The homestead exemption protects the debtor's family and helps to reduce the need for state services.

*Drenttel*, 403 F.3d at 615 (internal citation omitted); *see also Tolson*, 690 N.W.2d at 682 (noting policy considerations underlying Iowa exemption). "These policies are furthered by providing debtors a secure home protected from creditors; the location of the home is not relevant." *Drenttel*, 403 F.3d at 615.

The Trustee's attempts to distinguish *Williams* and *Stephens* are equally unavailing. While it is true the debtors in those cases had left Iowa and sought to use the Iowa exemption to protect property in their new state of residence, this was irrelevant to either decision.[4] Neither

---

**3.** In *Arrol*, the debtor bought a Michigan home in 1982 and, without selling it, moved to California in 1994. *Arrol*, 170 F.3d at 935. He moved back to the Michigan home shortly before filing for bankruptcy in the Northern District of California. *Id.* The Ninth Circuit Court of Appeals held that the debtor could apply California's homestead exemption to his home in Michigan. *Id.* at 937. Thus, while the debtor was actually living in the Michigan home when he filed his bankruptcy petition, *Arrol* is similar to the instant case in that the property at issue apparently had no "roots" in California, the state in which the debtor sought to invoke exemption laws.

**4.** This also was not a point of emphasis in *Drenttel*. In an attempt to distinguish *Williams* and *Stephens*, the Trustee relies on *In re Sipka*, 149 B.R. 181 (D.Kan.1992), where the debtor sought to apply Kansas's homestead exemption to the proceeds of a division of marital assets in Michigan. The *Sipka* court opined that the debtor sought "to extend the exemption to a situation where the involuntary sale took place in another state" and denied the exemption claim, reasoning

*Williams* nor *Stephens* relied upon the fact that the property at issue could trace its roots to Iowa. *Drenttel's* reasoning transcends such distinctions. "The federal bankruptcy statute dictates the applicable exemptions, requiring the debtor to file in the designated district, and stating that the debtor is entitled to federal exemptions or the exemptions provided by the law of the state where the petition is filed." *Drenttel,* 403 F.3d at 614. As a matter of federal bankruptcy law, Debtor is entitled to the Iowa exemptions and the court concludes that Iowa's homestead exemption can be applied to Debtor's California property.[5]

### B. Abandonment

The court turns to the Trustee's argument that the Bankruptcy Court erred in concluding that Debtor did not abandon the Newport Beach Property as a homestead.

#### 1. Abandonment under Iowa law

 Once a homestead is acquired, it is presumed to continue until its use is terminated. *In re McClain's Estate,* 220 Iowa 638, 262 N.W. 666, 669 (Iowa 1935). "[O]nce the homestead character has attached, the owner may remove therefrom and the homestead character is preserved as long as he has an intention to return." *Id.* "In other words, intention to occupy in the future, while insufficient to establish a homestead originally, is sufficient to continue a homestead previously established."

that the Kansas exemption has "no extraterritorial force." *Sipka,* 149 B.R. at 182–83. In *Drenttel,* the Eighth Circuit Court of Appeals cited *Sipka* as illustrative of the split of authority on this issue. *See Drenttel,* 403 F.3d at 613. The fact that the *Drenttel* court was cognizant of *Sipka,* and ultimately reached the contrary conclusion, is further reason to reject the Trustee's position in this case.

*Id.* at 669–70. "Whether or not a homestead has been abandoned is largely a matter of intent to be determined on the particular facts in each case." *Charter,* 292 N.W. at 843. "The question is one of intention and that must usually be determined from the testimony of the parties in the light of the surrounding circumstances." *Id.*

 Where actual occupancy of the homestead has ceased, a presumption of abandonment arises, "and the burden is upon the one claiming the homestead right to show that there was a fixed and definite purpose to return." *Fardal v. Satre,* 200 Iowa 1109, 206 N.W. 22, 24 (Iowa 1925). Thus, where the owner "has actually removed from the alleged homestead and actually occupied another residence, it becomes incumbent upon him to show that he did not intend a permanent abandonment of his homestead." *Ill. Oldsmobile Co. v. Miller,* 199 Iowa 894, 202 N.W. 751, 752 (Iowa 1925). The owner may meet this burden "by showing that he had a continued and fixed purpose to return, and such fact may be established by his own testimony as to his own intent." *Id.*

The question of the permanent residence of any person rests primarily in his own actual intent. He has a broad option in the matter, and the rules of law are very liberal in permitting him to make his own choice. We have said that "equity will not draw very fine sights, when dealing with homestead questions."

**5.** This result is not inconsistent with *Rogers,* which simply did not address the interplay between Iowa's homestead exemption and federal bankruptcy proceedings. *See In re Drenttel,* 309 B.R. 320, 325 (8th Cir. BAP 2004) (explaining cases such as *Rogers* by noting that *"[o]utside of the bankruptcy context,* the state where property is located generally has the dominant interest in determining whether the property is exempt" (emphasis added)).

*Id.* (quoting *Lutz v. Ristine,* 136 Iowa 684, 112 N.W. 818 (Iowa 1907)).

### 2. Bankruptcy Court's reasoning

In concluding that Debtor did not abandon the Newport Beach Property, the Bankruptcy Court relied primarily on its conclusion that Debtor did not leave the home voluntarily. Rather, the Bankruptcy Court concluded that "her removal from the homestead was forced by circumstances beyond her control. She was compelled by unpleasantness and then operation of law (the temporary restraining order) to be away from the property." Ruling at 17. Relying on a line of Iowa Supreme Court cases involving divorces or otherwise unpleasant relations, the Bankruptcy Court held that Debtor did not abandon the claimed homestead. The Bankruptcy Court also held that Debtor's conclusion that it is not currently possible for her to return to the Newport Beach Property does not effect an abandonment.

With respect to Debtor's willingness to sell the Newport Beach Property, the Bankruptcy Court reasoned that an offer to sell homestead property is not inconsistent with an intention to return and reoccupy the property if it is not sold. Further, the Bankruptcy Court noted that Debtor has a right to exchange a non-occupied homestead for a new homestead or sell it with an intent to purchase a new one.

### 3. Parties' arguments

The Trustee contends that the Bankruptcy Court improperly focused on Debtor's reasons for initially leaving the Newport Beach Property, "finding that because she did not leave the home voluntarily, she did not abandon her homestead right." Trustee's Br. at 13–14. The Trustee believes the Bankruptcy Court failed to consider whether abandonment occurred legally at some point after Debtor's departure. When Debtor's absence from the property is viewed as a whole, rather than "in the vacuum of the initial reasons for leaving," the Trustee submits "it becomes clear that, as a matter of law she did abandon her homestead right." *Id.* at 14.

The Trustee raises two specific challenges to the Bankruptcy Court's ruling on the abandonment issue.[6] First, the Trustee argues that Debtor abandoned her homestead when her intent to return to the Newport Beach Property became conditional upon her finding the financial means to afford the home. Second, the Trustee contends that Debtor's expressed desire to have the Newport Beach Property sold to satisfy her debts is legally inconsistent with her ability to maintain a homestead exemption.

Debtor submits that the Bankruptcy Court correctly found that her departure from the Newport Beach Property was involuntary. As such, Debtor contends her removal does not constitute abandonment. Debtor concedes she intends to sell the home to pay her creditors. However, she disputes the Trustee's suggestion that such a plan is inconsistent with the intent of also using the proceeds to purchase a new homestead. According to Debtor, "the goals of paying her creditors *and* buying a replacement homestead are not mutually exclusive." Debtor's Br. at 13.

---

6. The Trustee does not challenge the Bankruptcy Court's conclusion that Debtor's initial removal from the Newport Beach Property was involuntary. However, the Trustee notes that she "does not concede and/or waive her right to argue that the Debtor's departure was voluntary" in response to briefing by Debtor. Trustee's Br. at 14 n. 4. In her Reply Brief, the Trustee does not argue that Debtor's initial departure was voluntary.

### 4. Application

#### a. Conditional intent to return

The Trustee acknowledges that one can maintain a homestead right in the absence of actual occupation if the *timing* of return is conditional upon the happening of certain events. *See Schaffer v. Campbell,* 198 Iowa 43, 199 N.W. 334, 337 (Iowa 1924) ("[I]f the abandonment was temporary, and with the specific intent to return at some future time, the length of the period being dependent on future conditions, then there was no abandonment."). However, the Trustee notes a distinction in cases where the *intent to return* is itself conditional upon certain events happening in the future. *See id.* ("If the intention was to return if they could at some time in the remote future obtain employment for the husband in [the former town], and this intent was conditional on securing the work, doubtless the abandonment would be complete. . . .").

> The distinction lies in this: That in the one case there is an intention to return, provided certain conditions exist, while in the other there is fixed and definite intent to return from the beginning, the period of absence alone being conditional.

*Id.*

The Trustee argues that "Debtor's statements of intent to return to the Newport Beach Property were always conditional upon the happening of future events." Trustee's Br. at 16. The Trustee focuses on Debtor's testimony that she is unable to live in the Newport Beach Property because, among other reasons, she cannot afford a $1.2 million home or the property taxes associated with it. The Trustee also points to the following testimony by Debtor:

> [T]here's no way I can buy back into that house. I would love to be able to buy it again at its original purchase price, but that's not how market values happen. You know, I would love to be able to live there again. It would be the greatest thing in the world. But my life of living there is over thanks to what happened.

Tr. at 28. According to the Trustee, "these statements are statements of an intent to return if and only if the Debtor somehow finds the financial means to afford the Newport Beach property; statements not sufficient to maintain a homestead exemption." Trustee's Br. at 16. Even if Debtor initially intended to return to the Newport Beach Property, the Trustee argues that "the moment her intent became conditional upon her future financial wherewithal, she no longer possessed the required fixed and abiding intent to return and she abandoned her homestead right as a matter of law." *Id.*

#### b. Willingness to sell the homestead

 The court assumes, without deciding, that Debtor's intent to return to the Newport Beach Property is conditional on her obtaining the financial means to afford the home. Nonetheless, the court rejects the Trustee's argument that Debtor abandoned the homestead.

 One can maintain a homestead without actually intending to return and live in it. Iowa law contemplates such a scenario:

> Where there has been a change in the limits of the homestead, or a new homestead has been acquired with the proceeds of the old, the new homestead, to the extent in value of the old, is exempt from execution in all cases where the old or former one would have been.

Iowa Code § 561.20. "[T]he owner of a homestead may change his homestead, and . . . may sell the old and acquire a new one without any interruption in his homestead

172

rights...." *Vittengl v. Vittengl,* 156 Iowa 41, 135 N.W. 63, 65 (Iowa 1912). "There is no prescribed method as to how this shall be done." *State v. Geddis,* 44 Iowa 537, 1876 WL 781, at *1 (Iowa Oct. 23, 1876). "The statute does not provide that the sale must be for money in hand, which must be immediately invested in the new homestead; that is, that the selling of the old and purchasing the new must be simultaneous acts." *Id.* The owner "is entitled to a reasonable time to accomplish such change." *Vittengl,* 135 N.W. at 65.

In other words, merely selling one's homestead is not abandonment if the owner intends to apply the proceeds to the purchase of a new homestead. As Debtor notes, "the Trustee's argument that the Debtor lost her homestead rights when her intention to return became conditional disregards her option and intention to sell and purchase a new homestead." Debtor's Br. at 12 n. 1. The court concludes that Debtor may maintain her homestead rights in the Newport Beach Property even if her intent to return to and actually live in the home are conditional.

In concluding that Debtor did not abandon the homestead, the Bankruptcy Court noted Debtor's right to use the proceeds of any sale to purchase a new homestead. The Trustee contends this is "the flaw with the Bankruptcy Court's decision." Trustee's Br. at 17. Specifically, the Trustee argues that Debtor "did not intend to sell the Newport Beach Property to invest the proceeds in a new homestead, she wanted the Property sold so she could pay off her debts, a purpose legally inconsistent with the maintenance of a homestead exemption." *Id.* Trustee points to Debtor's testimony that selling the home was "the only way [she] could pay off [her] debts and get this behind [her]...." Tr. at 26. Debtor also testified that she does not like being in debt, wants to pay her creditors and

that selling the property "is a way to do it...." *Id.* Debtor testified similarly in her deposition:

> I was hoping that we could sell the property and then be able to pay off our debts and be done and move forward. That is all I actually ever considered.

Trustee's Appendix (docket nos. 4–1 through 4–13) at 226. From this and similar testimony, the Trustee reaches the conclusion that "Debtor does not have an intent to use the proceeds from the sale of the Newport Beach Property to purchase a new homestead...." Trustee's Br. at 19. To the extent it found otherwise, the Trustee contends the Bankruptcy Court erred.

Debtor asks the court to review for clear error, arguing that the alleged flaw in the Bankruptcy Court's Ruling—whether Debtor intended to use the proceeds to purchase a new homestead—is a factual finding. The Trustee objects, noting that it "does not take issue with the Bankruptcy Court's factual findings in its Ruling." Reply Br. at 1. Instead, the Trustee insists its appeal "involves undisputed facts, *i.e.* the Debtor's own testimony and statements of intent, and the legal conclusions flowing therefrom, and is therefore subject to *de novo* review by this [c]ourt." *Id.* at 2.

Regardless of the standard of review, the court rejects the Trustee's contentions. As Debtor notes, she was never directly asked whether she intended to purchase a new homestead. The Trustee simply concludes that because Debtor intends to pay her creditors, she necessarily must not intend to also purchase a new homestead. The court rejects this position. The circumstances of this case make clear that Debtor's intent to pay off her creditors is not inconsistent with an intent to also purchase a new homestead. As Debtor explains, given the value of the Newport

Beach Property,[7] a sale would generate fairly significant proceeds even after paying the mortgage debt and splitting the net proceeds with Hogan. Debtor posits, and the Trustee does not contest, that a substantial sum would remain after paying Debtor's unsecured debts. The court sees no reason to disturb the Bankruptcy Court's ruling on the issue of abandonment.

## VI. CONCLUSION

The Bankruptcy Court's December 29, 2010 Ruling overruling the Trustee's objection to Debtor's claimed homestead exemption is **AFFIRMED.**

**IT IS SO ORDERED.**

---

**7.** As to the home's actual value, the court agrees with Debtor that it is irrelevant. "[T]he issue is what she thought it was worth and therefore what she intended to do with the proceeds." Debtor's Br. at 14.